NATURAL HARMONY, INC., ET AL. *v.* ARTHUR J. NORMAND
(13517)

PETERS, C. J., HEALEY, SHEA, GLASS and SANTANIELLO, JS.

Argued January 11—decision released May 9, 1989

*Joel M. Ellis,* with whom, on the brief, was *Martin P. Gold,* for the appellant (defendant).

*Walter A. Twachtman, Jr.,* for the appellees (plaintiffs).

PER CURIAM. This case involves an appeal from an order of specific performance of an option agreement for the sale and purchase of real estate that has been the subject of a previous action.[1] The defendant makes a number of claims of error in the trial court's equitable disposition of the plaintiffs' specific performance claim. We find no error.

In the course of its comprehensive opinion, the trial court, *Stengel, J.,* referred to the "file and the deci-

[1] The first action, instituted in 1982, was brought by Natural Harmony, Inc., Wildlife, Inc., and Frank Hastings against Arthur Normand. Superior Court, judicial district of Tolland at Rockville, Docket No. 28317 (June 27, 1985). Frank Hastings was the sole stockholder in Natural Harmony, Inc., and Wildlife, Inc. That action claimed damages, an accounting, a judgment claiming that the term of an option agreement, dated October 23, 1979, between Natural Harmony, Inc., and Normand be extended, a reformation of the option agreement or, in the alternative, an order that the premises be conveyed to the plaintiffs, attorney's fees and costs, punitive damages, a declaration that the assignment of rents be declared void and any other relief that the court might deem just and proper. In that action, the defendant filed a counterclaim claiming damages and punitive damages, an injunction restraining the plaintiff Frank Hastings from entering on the premises, attorney's fees and such other relief as the court might deem proper in law or in equity. The court, *Hale, J.,* found "the issues for the plaintiffs on the complaint and for [the] plaintiffs on the defendant's counterclaim." See *Sessa* v. *Barney,* 130 Conn. 718, 721, 37 A.2d 233 (1944); *Wilson* v. *Cheshire Brass Co.,* 88 Conn. 118, 122, 89 A. 903 (1914). No appeal was taken from that judgment.

The second action, which is the subject of the present appeal, was instituted in 1986 by Natural Harmony, Inc., and Frank Hastings against Arthur Normand. Superior Court, judicial district of Tolland at Rockville, Docket No. 37154 (December 10, 1987). This action claimed injunctive relief, a decree compelling the defendant to transfer the premises pursuant to the option agreement of October 23, 1979, by specific performance, or a decree vesting title to the premises in the plaintiffs, damages, punitive damages, attorney's fees and costs, or a decree that the term of the option agreement be further extended and any other equitable relief deemed just and proper. The trial court, *Stengel, J.,* concluded that the plaintiffs had established that specific performance was appropriate and it ordered specific performance. In ordering that the defendant convey the real estate that was the subject of the option agreement to the plaintiffs, it did so in accordance with a purchase price of $61,701.50 that was based on evidence adduced.

sions" in the first action in accordance with the stipulation of the parties. "The construction of a judgment is a question of law for the court. . . . [In construing judgments,] '[e]ffect must be given to that which is clearly implied as well as to that which is expressed.' " *Lashgari* v. *Lashgari,* 197 Conn. 189, 196–97, 491 A.2d 495 (1985). The trial court, *Stengel, J.,* determined that the trial court, *Hale, J.,* in the first action had "found serious and substantial breaches of the [option] contract by the defendant [Normand]."

The trial court, *Stengel, J.,* concluded that, "based on credible evidence, the defendant [Normand] in his overall actions and in thwarting the proposed closing [of title on the premises involved], was again displaying inequitable conduct," as the trial court, *Hale, J.,* had concluded in the earlier lawsuit. Moreover, it found, on the credible evidence that the defendant's refusal to close was "unjustified," that his actions to thwart the closing were "designed" and that his conduct constituted a breach of the option agreement. In arriving at its conclusions, the trial court, *Stengel, J.,* also determined that the credible evidence demonstrated that the parties had dealt with each other in an individual capacity with the defendant dealing with Frank Hastings individually and never requiring or requesting corporate action.

"It is well settled that it is the province of the trier of fact to weigh the evidence presented and to determine its credibility and effect." *Reynolds* v. *Ramos,* 188 Conn. 316, 320, 449 A.2d 182 (1982). This includes the right to draw reasonable inferences from that evidence. *State* v. *Gonski,* 155 Conn. 463, 467, 232 A.2d 483 (1967). An examination of the trial transcripts discloses that neither the defendant nor the attorney who had represented him during the first trial and for a time thereafter testified at the second trial. The plaintiff Frank Hastings as well as the attorney who had rep-

resented the plaintiffs at the first trial and for a time thereafter did testify at the second trial. Thus, from its analysis of the record of the first action and from the evidence at the second trial, the trial court, *Stengel, J.,* concluded that the defendant "had elected to deal with Frank Hastings individually and [that] the defense of corporate performance has been waived."[2]

---

[2] Despite the claim of the defendant's present counsel that this conclusion is clearly erroneous, our review of what is properly before us on this appeal requires us to reject this claim. Specifically, the defendant argues that there was no subject matter jurisdiction for the trial court to pass on any claims made by Frank Hastings individually; this claim is without merit on the law and the evidence. The trial court, *Stengel, J.,* noted that the decsision of the trial court *Hale, J.,* on the first action "held that the three plaintiffs therein, i.e., Natural Harmony, Inc., Wildlife, Inc. and Frank Hastings, for the purposes of his opinion were referred to in the singular" and that "[i]n [that] decision Judge Hale made no distinction between the corporation and Frank Hastings individually."

During the second trial, defendant's counsel cross-examined Hastings concerning the basis of his claim that the first action was presented to that trial court, *Hale, J.,* on the theory that the three plaintiffs in that case were really one party. Hastings not only referred to the statement of Judge Hale in his memorandum of decision that "[f]or purposes of this opinion the Court shall refer to the [three] plaintiffs in the singular," but also to a later statement by Judge Hale, made in a written memorandum filed in the first action after the judgment in that case. Hastings read the following remarks of Judge Hale: "I reiterated to counsel that the judgment as originally filed correctly reflected my decision on the case particularly addressing myself to the fact that the plaintiffs in the case were from the outset regarded by the parties and their counsel, as I am sure the record will show, as a single plaintiff and interchangeable and coextensive in their relationship to this case and the trial was so conducted . . . thus the opinion reflects that fact." An examination of the record in the first action shows that these remarks were made by Judge Hale in his memorandum of decision on the plaintiffs' "Motion to Compel" compliance by the defendant with the judgment in the first action. This memorandum is highly significant coming as it did from the judge who had tried the earlier action and from whose judgment no appeal was ever taken. Thus, the trial court treated the three plaintiffs in that action in the singular for substantive purposes and not merely for convenience as the defendant's present counsel claims. Frank Hastings was the sole stockholder in Natural Harmony, Inc., and Wildlife, Inc., both of which had been dissolved prior to the trial of the second action. "The equitable powers of the court can be invoked only by the real party in inter-

Having brought an action for specific performance, "the plaintiff invoked the equitable powers vested in the trial court." *Frumento* v. *Mezzanotte,* 192 Conn. 606, 615, 473 A.2d 1193 (1984). "The granting of specific performance of a contract to sell land is a remedy which rests in the broad discretion of the trial court depending on all of the facts and circumstances when viewed in light of the settled principles of equity." Id.; *Smith* v. *Hevro Realty Corporation.,* 199 Conn. 330, 345, 507 A.2d 980 (1986); H. McClintock, Handbook of the Principles of Equity (2d Ed. 1948) § 54.

Certain principles of equity, therefore, furnish guidance in our disposition of this appeal. "The governing motive of equity in the administration of its remedial system is to grant full relief, and to adjust in the one suit the rights and duties of all the parties, which really grow out of or are connected with the subject-matter of that suit . . . ." 1 J. Pomeroy, Equity Jurisprudence (5th Ed.) § 114; see *Maruca* v. *Phillips,* 139 Conn. 79, 82–83, 90 A.2d 159 (1952). Equity regards as done what ought to be done; *Shippee* v. *Pallotti, Andretta & Co.,* 117 Conn. 472, 475, 168 A. 880 (1933); 2 J. Pomeroy, supra, § 363; or "which ought to have been done." *Peninsula Methodist Homes & Hospital, Inc.* v. *Cropper,* 256 Md. 728, 737, 261 A.2d 787 (1970); *Langevin* v. *Hillsborough County,* 114 N.H. 317, 320, 320 A.2d 635 (1974); 2 J. Pomeroy, supra, § 365. "Equity always looks to the substance of a transaction and not to mere form"; *Connecticut National Bank* v. *Chapman,* 153 Conn. 393, 397, 216 A.2d 814 (1966); and seeks "to prevent injustice." *Bump* v. *Stewart, Wimer & Bump, P.C.,* 336 N.W.2d 731, 736 (Iowa 1983); see 30 C.J.S., Equity §§ 30, 107.

est." *Connecticut Society of Architects, Inc.* v. *Bank Bldg. & Equipment Corporation,* 151 Conn. 68, 74, 193 A.2d 493 (1963). The trial court correctly determined that Frank Hastings individually was the real party in interest.

"The principles of equity evolved as a necessity in order to obtain justice because the law by reason of its universality was deficient. Equity in its true and genuine meaning is the soul and spirit of all law, and positive law is construed by it and rational law is made by it. In this, equity is synonymous with justice. Equity depends essentially upon the particular circumstances of each individual case. That being so, *there can be no established rules and fixed principles laid down* for its application, without destroying its very existence, and reducing it to positive law. The nature of equity is to amplify, enlarge, and add to the letter of the law and every particular case stands upon its own circumstances. Story's *Equity Jurisprudence* Vol. I, Ch. 1; Chitty's *Blackstone,* Bk. I, Sec. 1." (Emphasis in original.) *Aetna Casualty & Surety Co.* v. *Jeppesen & Co.,* 440 F. Sup. 394, 403 (D. Nev. 1977).

This court has proclaimed repeatedly that it is not within our province to retry facts. *Commission on Hospitals & Health Care* v. *Stamford Hospital,* 208 Conn. 663, 674, 546 A.2d 257 (1988); *Coehlo* v. *Posi-Seal International, Inc.,* 208 Conn. 106, 124–25, 544 A.2d 170 (1988); *Merrill Lynch, Pierce, Fenner & Smith, Inc.* v. *Cole,* 189 Conn. 518, 524, 457 A.2d 656 (1983). A factual ruling of a trial court will not be disturbed unless it is clearly erroneous. § Practice Book § 4061; *Commission on Hospitals & Health Care* v. *Stamford Hospital,* supra; *Smith* v. *Hevro Realty Corporation,* supra.

The defendant's claims of error in this appeal are challenges that are inextricably connected to the factual findings made by the trial court. Our careful examination of the record reveals no clear error in the trial court's findings. The discretionary equitable ruling of the trial court is legally and logically sound. See *Smith*

v. *Hevro Realty Corporation,* supra; *Lees Curtain Co.
v. Scinto,* 13 Conn. App. 822, 822–23, 538 A.2d 1063
(1988).

There is no error and the case is remanded to the
trial court, *Stengel, J.,* with direction to set the date
of the transfer of the real estate ordered.