[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
In this case, the plaintiff alleges a tortious interference with a contractual relationship. Essentially, it was alleged that Frank L. Hastings had an option agreement with Arthur J. Normand whereby Mr. Hastings was to develop a tract of land into building lots and sell the building lots off. As the lots were sold, the defendant Normand was to convey them and in return, he was to receive a portion of the purchase price. The complaint alleges that the plaintiff Marrotte entered into an agreement to buy a lot from Hastings, but the defendant tortiously refused to convey the lot, and that as result of the refusal to convey the plaintiff at a later date purchased the lot for a much higher price, to his detriment and damage.
The elements of tortious interference include:
A. The existence of a contractual or beneficial relationship;
B. The defendant's knowledge of that contractual or beneficial relationship, and
C. An intentional interference with it. (and a consequent loss) See Solomon v. Aberman, 196 Conn. 359, 383
(1985); Hart, et al v. Rogers, 16 Conn. App. 619, 629 (1988).
These elements have been amplified and discussed by the Connecticut Supreme Court:
 "While our cases have not focused with particularity on what acts of interference are tortious, we have made it clear that not every act that disturbs a contract or business expectancy is actionable. For a plaintiff successfully to prosecute such an action it must prove that the CT Page 10846 defendant's conduct was in fact tortious. This element may be satisfied by proof that the defendant was guilty of fraud, misrepresentation, intimidation or molestation ___ or that the defendant acted maliciously" Blake v. Levy, 191 Conn. 257, 260-261 (1983). A claim for tortious interference is made out only when interference resulting in injury to another is wrongful by some measure beyond the fact of the interference itself. The plaintiff must prove at least some improper motive or improper means. Blake v. Levy, supra, at page 262.
The Court, by stipulation of the parties, has taken judicial notice of two cases related to the instant action; Natural Harmony, Inc. et al v. Arthur J. Normand, Tolland County Judicial District No. 37154; Natural Harmony, Inc., et al v. Arthur Normand, 211 Conn. 145 (1989) and Natural Harmony, Inc. et al v. Arthur Normand, Tolland County Judicial District, No. 28317. The Court has examined these judicially noticed matters, including the memoranda of decision filed by the Courts in those cases.
The underlying basis of this dispute and the earlier judicially noticed cases is a troublesome option agreement entered into in 1979 between Natural Harmony Inc., a company owned by one Frank Hastings, who was the real party in interest in those cases, and the defendant Arthur Normand. Hastings was a real estate developer, who wanted to subdivide and develop a parcel of land in the Town of Coventry approximately 100 acres in size. Needing money to purchase the piece he approached Normand who agreed to finance its purchase and on October 23, 1979 Hastings and Normand entered into the option agreement which became the focus of much litigation. (Joint Exhibit A).
A portion of the acreage was subdivided into eight (8) building lots. (Joint Exhibit F-1). The option agreement provided that the principal sum of $66,000.00 was the purchase price of the total property. It provided for a schedule of annual bonus payment to Normand. It also provided that Hastings would repay the principal sum and interest by a payment of sixty-five (65) percent of the purchase price of lots sold, with forty-nine (49) percent of that sixty-five (65) percent to be allocated to the payment of principal and interest. The remaining sixteen (16) percent of the sixty-five (65) percent was to be allocated to the annual bonus payments. The option agreement did not provide for a specific price for the release of any of the subdivided lots, nor did it provide any formula to arrive at CT Page 10847 a purchase price for a particular lot. It did state that Hastings had "the right to sell lots during the term of this agreement as long as the lots sold are in conformity with the subdivision law of the State of Connecticut." During 1979 and 1980, lots 1, 2, 3, and 4 were sold without problem. Lot 8 was also later conveyed without problem. Normand conveyed out and received sixty-five (65) percent of the purchase price for those lots. The sales price of those individual lots ranged from $10,000.00 to approximately $13,000.00 and their sales prices were their fair market value at the time.
In 1981, the good working relationship between Hastings and Normand broke down. Normand, realizing that the property's value was worth substantially more than the payoff he was entitled to from Hastings, tried to become a partner of Hastings but was rebuffed. The relationship quickly deteriorated to the point where Hastings' efforts to develop the land were being frustrated and he brought the first suit against Normand. (Tolland J.D. No. 28317). The Court in that case found inequitable conduct on the part of Normand, but also found a mutual mistake. It reformed the option agreement as to the computation of interest and, for equitable reasons, extended the option date by 322 days in order to give Hastings as much time to complete the contract as he would have had if Normand had not breached it. (The original option agreement was for a term of three years).
The relationship between Hastings and Normand was still difficult however, and in 1986 when Hastings tried to pay off the option price and take title to the land, Normand, claiming he was owed more money than Hastings was willing to pay, unjustifiably refused to close, according to the finding in Docket Number 37154, Tolland J.D. The Court in that case established a pay off figure of $61,701.00 and ordered the transfer of the property to Hastings within thirty (30) days. That decision was affirmed by the Connecticut Supreme Court in 211 Conn. 145 (1989) and sometime between May 1989 and October 1989, Hastings finally paid off Normand and obtained title to the property.
Subsequent to the decision in Tolland J.D., No. 28317, Hastings entered into an agreement with the present plaintiff, Gordon Marrotte, wherein they were to jointly apply for a construction mortgage on Lots 5 and 7 with Lot 7 to be Hastings' and Lot 5 to belong to Marrotte. (The purpose of a joint mortgage was that the bank would be more likely to give a mortgage if both their incomes were combined on the application).
At the time, Lot 5 (3.59 acres) had a fair market value CT Page 10848 of $20,000.00, but Marrotte could not pay that amount. Hastings therefore agreed to sell Marrotte the lot for $10,000.00, and his attorney sent to Normand's attorney a copy of the Agreement to Buy Lot #5 (dated September 25, 1985) for $10,000.00. (Plaintiff's Exhibit B C) and requested a conveyance out from Normand.
Normand's attorney replied that Normand would be willing to sell Lot 5 for $20,000.00, but would not do so for $10,000.00 (Plaintiff's Exhibit D). He reasoned that Normand's protection for the money still owed him by Hastings would be jeopardized by the proposed sale at half of fair market value. If sold for $20,000.00 Normand would have been entitled to $6,500.00 more by the terms of the agreement. Hastings, knowing that Marrotte could not afford to pay $20,000.00 never conveyed the counter offer to him, but told him it "wouldn't fly". Eventually on October 4, 1989, after Hastings bought out the tract from Normand, he sold Lot #5 to Marrotte for $75,000.00. Marrotte paid $10,000.00 in cash and Hastings took back a $65,000.00 purchase money mortgage. If he cannot pay the note (which is presently in arrears) he has the option of returning the lot back to Hastings with the note being forgiven.
Neither of the prior decisions in the suits between Hastings and Normand directly involved the dealing with Lot #5. The earlier case (Docket Number 28317, Tolland J.D.) pre-dated any of the events involved here, and the latter case (Docket Number 37154, Tolland J.D.), while referring to the transaction, really involved Normand's refusal to close on the entire piece. The decision in that case found that if Lot 5 closed, it would have sold for $20,000.00.
The plaintiff's position is that Normand did not have the authority to reject the sale of Lot #5 because of objection to the purchase price and that the option agreement permitted Hastings alone to determine the sales price of the lots. The fact is that the option agreement did not address what the sales prices of the lots were to be. All of the prior lots were sold at fair market price. The plaintiff here contracted with Hastings to purchase a lot at half of its fair market value, and argues that the defendants' refused to convey at that price was tortious. The Court does not agree.
The defendant was willing to convey Lot #5 for $20,000.00 which was its fair value. His attorney was concerned that if Lot #5 was released for $10,000.00 the defendant would have been left with inadequate security for the remaining debt, and the plaintiff did not show otherwise. CT Page 10849 Under these circumstances, the refusal and counter-offer were reasonable steps taken by Normand to protect his business investment. Despite the fact that he had previously acted in violation of his contractual obligation with Hastings, the Court cannot conclude that he tortiously interferred in this instance. See Handley v. Cuneo Eastern Press, 279 F.2d 181
(1960). If Hastings could arbitrarily set the purchase price at any figure he chose, he could have sold lots off for a fraction of their value. Clearly that is as unreasonable a result as if Normand could have demanded a purchase price far in excess of the fair market value.
The plaintiff's attorney (at the time of the dealings involved herein) testified that his interpretation of the option agreement was that Hastings and Normand were expected to be reasonable with respect to the lot prices. To interpret it otherwise could lead to a totally irrational result. Normand's attorney testified that he had a similar interpretation of the option agreement and that the principals were expected to agree on the purchase price, as they did in connection with the prior sales.
The Court finds that Mr. Normand's actions here were not a tortious interference with Mr. Marrotte's agreement with Mr. Hastings.
Judgment shall enter for the defendant.
HON. LAWRENCE KLACZAK SUPERIOR COURT JUDGE