[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE MOTION TO STRIKE #123
On August 19, 1998, the plaintiff, Oswald Carrol, filed a six count "First Amended Complaint" against the defendant, Allstate Insurance Co., arising out of the payment of a claim under an insurance contract issued to the plaintiff by the defendant. Count one alleges that as a result of a fire, the plaintiff suffered personal property loss, and that the defendant paid the portion of the claim consisting of the loss to the premises, and also paid the plaintiffs wife her portion of the personal property loss. The plaintiff further alleges that the defendant has failed to fully investigate and failed to pay the plaintiff his portion of the claim, and, therefore, breached the contract.
Count two seeks specific performance under the terms of the insurance policy, and counts three and four allege negligent and intentional infliction of emotional distress, respectively.
Count five alleges a breach of the common law covenant of good faith and fair dealing, and count six asserts a violation of the statutory obligation of good faith and fair dealing, pursuant to General Statutes § 42a-1-203. In count seven, the plaintiff alleges a violation of Connecticut's Unfair Trade Practices Act (CUTPA), premised upon the defendant's violation of General Statutes § 42-11Ob, et seq., and count eight asserts a violation of Connecticut's Unfair Insurance Practices Act CT Page 7029 (CUIPA), premised upon the defendant's violation of General Statutes § 38a-816 (6).[1]
On January 29, 1999, the defendant filed a motion to strike counts two, six, seven, and eight of the plaintiffs first amended complaint, accompanied by a memorandum in support. On February 11, 1999, the plaintiff filed an objection to the motion to strike, and a memorandum in opposition.
"The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any complaints . . . to state a claim upon which relief can be granted." (Internal quotation marks omitted.) Peter-Michael, Inc. v. Sea ShellAssociates, 244 Conn. 269, 270, 709 A.2d 558 (1998). "[W]e must take as true the facts alleged in the plaintiffs complaint and must construe the complaint in the manner most favorable to sustaining its legal sufficiency." (Internal quotation marks omitted.) Id. "In ruling on a motion to strike, the court is limited to the facts alleged in the complaint." (Internal quotation marks omitted.) Waters v. Autori, 236 Conn. 773, 825,676 A.2d 357 (1996). "A motion to strike is properly granted if the complaint alleges mere conclusions of law that are unsupported by the facts alleged." Novametrix Medical Systems.Inc. v. BOC Group. Inc., 224 Conn. 210, 215, 618 A.2d 25 (1992). "If facts provable in the complaint would support a cause of action, the motion to strike must be denied." Faulkner v. UnitedTechnologies Corp., 240 Conn. 576, 580, 693 A.2d 293 (1997).
 Count Two
In the allegations in count two, "[p]laintiff requests that the court order the [d]efendant to specifically perform under its Contract of Insurance." The defendant moves to strike on the ground that the remedy of specific performance is inapplicable for an alleged breach of a property insurance policy. The defendant contends that count two of the plaintiffs first amended complaint is legally insufficient because the remedy of specific performance is not available to enforce an insurance policy. The defendant maintains that money damages are the only available remedy for the breach of an insurance contract because the payment of money is the essence of the contract.
The plaintiff counters that all of the conditions required for an order of specific performance have been met in that "the Plaintiff has paid his premiums and has complied with all CT Page 7030 requirements established by the Defendant with regard to proper claim filing and suit filing." (Plaintiffs Memorandum in Opposition).[2] Additionally, the plaintiff argues that he is entitled to plead in the alternative, and may seek monetary damages for breach of contract in count one and specific performance in count two.
Specific performance is a well-recognized remedy parties may seek in equity to enforce their rights. "Equity depends essentially upon the particular circumstances of each individual case. That being so, there can be no established rules and fixedprinciples laid down for its application, without destroying its very existence, and reducing it to positive law. The nature of equity is to amplify, enlarge, and add to the letter of the law and every particular case stands upon its own circumstances." (Emphasis in original; internal quotation marks omitted.) NaturalHarmony, Inc. v. Normand 211 Conn. 145, 150, 558 A.2d 231
(1989); see also Briggs v. Sylvestri, 49 Conn. App. 297, 304,714 A.2d 56 (1998). Moreover, "[t]o be specifically enforceable, a contract must be fair, equitable, certain and mutual, consistent with policy and made on good consideration." (Internal quotation marks omitted.) Burns v. Gould, 172 Conn. 210, 214, 374 A.2d 193
(1977).
Generally, specific performance is a permissible equitable remedy for certain types of contracts, such as real estate. SeeNational Harmony. Inc. v. Normand, supra, 211 Conn. 145. See also, Briggs v. Sylvestri, supra, 49 Conn. App. 304 (same). No law was found, however, explicitly excluding it as a remedy for any other types of contracts,[3] barring the initial requirement that there is no adequate remedy at law.[4] The plaintiff here fails to allege that there is no adequate remedy at law, however, "specific performance, like other equitable relief, is not conditioned on an allegation that there is no adequate remedy at law." (Emphasis in original.) Burns v. Gould, supra, 172 Conn. 214. Further, pursuant to Practice Book §10-25, a party is permitted to plead in the alternative.
"The availability of specific performance is not a matter of right, but depends rather upon an evaluation of equitable considerations. . . . The determination of what equity requires in a particular case, the balancing of the equities, is a matter for the discretion of the trial court." (Citations omitted; internal quotation marks omitted.) Allen v. Nissley, 184 Conn. 539, 546,440 A.2d 231 (1981). Moreover, the "trial court's determination CT Page 7031 to award or to refuse damages as an incident to a decree of specific performance rests to a significant extent in the exercise of the court's discretion, depending upon the equities of the case and based on reason and sound judgment." (Internal quotation marks omitted.) Id.
The defendant moves to strike count two on the ground that "the remedy of specific performance is inapplicable for claimed breach of a property insurance policy. . . ." (Defendant's Motion to Strike). Because the availability of specific performance is generally a matter for the discretion of the trial court, the defendant's motion to strike count two of the first amended complaint is denied.
 Count Six
Count six alleges that the defendant, by failing to cover the plaintiffs loss pursuant to the insurance policy, breached the covenant of good faith and fair dealing under General Statutes § 42a-1-203[5] The defendant moves to strike count six on the ground that the UCC is inapplicable to insurance policies. The defendant argues that each UCC article applies to a specific area of commercial law, for example Article 2 governs transactions of goods and Article 3 applies to negotiable instruments, and that none of the articles pertain to insurance. In evaluating whether Article 2 applies to this case, for example, it would be necessary to determine whether an insurance policy qualifies as "goods" under the UCC. General Statutes §42a-2-105 (1) provides in relevant part that: "" Goods' means all things, including specially manufactured goods, which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid. . . ." General Statutes § 42a-2-105(1).[6] Neither Connecticut's Supreme Court nor Appellate Court has addressed this issue. One Superior Court decision, however, has emphasized that "the term, contract of sale, is limited to agreements relating to the present or future sale of goods. . . . Goods means movables or personal property and could not very well include services. . . ." (Citations omitted; internal quotation marks omitted.) Cacace v.Morcaldi, 37 Conn. Sup. 735, 739-40, 435 A.2d 1035 (App. Sess. 1981).
"[I]f the present agreement is not one which could be called a `transaction in goods, ' or a sale of `goods,' it does not fall within the . . . provisions of the UCC." Gulash v.CT Page 7032Stylarama, Inc., 33 Conn. Sup. 108, 111, 364 A.2d 1221 (1975).
Upon examining other sources, however, it is submitted that the application of Article 2 to insurance policies is disfavored. "The principle that Article 2 is not applicable to a pure service contract has been applied in numerous instances . . . [including the] insurance agency contract. . . ." lA R. Anderson, Uniform Commercial Code (3d Ed. 1996) § 2-105:27, pp. 687, 690. Courts from other jurisdictions, which have adopted versions of the Uniform Commercial Code similar to Connecticut's. have determined that in various contexts, insurance policies are contracts of service, and thus not subject to Article 2. After analyzing the liability of an insurance company for the negligent acts of its insured, the court in Bartley v. NationalUnion Fire Ins, Co., 824 F. Sup. 624, 636 (N.D. Tex. 1992), determined that insurance contracts do not fit within the definition of goods promulgated by the Uniform Commercial Code. In Elrad v. United Life Acc. Ins. Co., 624 F. Sup. 742, 744
(N.D.Ill. 1985), the insured plaintiff filed a claim against the defendant insurance company, alleging misrepresentation in connection with the sale of a life insurance policy. The court held that life insurance contracts were not "goods" within the scope of the Uniform Commercial Code. In Nielson v. United Servs.Auto Ass'n., 244 Ill App.3d 658, 612 N.E.2d 526, 531, appeal denied, 152 Ill.2d 563, 622 N.E.2d 1210 (1993), the plaintiffs sued their insurance company when it failed to cover all fire damage to their home. The plaintiffs claimed breach of contract, breach of custom and usage, breach of implied warranty, breach of fiduciary duty, and negligence. The court affirmed a lower court's dismissal of the claims. Specifically, the court held that as to the breach of implied warranty claim, the Uniform Commercial Code did not apply to insurance contracts because insurance contracts do not constitute a sale of goods. InCavanauh v. Nationwide Mutual Ins. Co. (Summit Co.), 65 Ohio App.2d 123,416 N.E.2d 1059, 1063, (1976), insurance agents sued their former employer insurance company for alleged wrongful termination of agency agreements. In addressing the plaintiffs argument that the "termination at will" provision of their contract was unconscionable and thus, subject to Article 2, the court held that where a contract is predominately a contract for services, such as an insurance agency contract, it is not governed by Article 2. Finally, in Oxford Lumber Co. v.Lumbermens Mutual Ins. Co., 472 So.2d 973, 978 (Ala. 1975), the court determined that for purposes of the Alabama Extended Manufacturer's Liability Doctrine, the issuance of an insurance CT Page 7033 contract is a service, and not a product subject to the sales of goods provisions under the Uniform Commercial Code.
Based upon the foregoing, the court finds that the sale of the insurance policy from the defendant to the plaintiff did not constitute a sale of goods subject to the UCC. Therefore, the court grants the defendant's motion to strike count six of the plaintiffs first amended complaint.
 Count Seven
In count seven, the plaintiff alleges that by providing him with insurance coverage, the defendant was under an implied legal duty to act fairly and in good faith with respect to handling claims made pursuant to the policy. The plaintiff alleges that the defendant breached the duty of good faith and has engaged in unfair or deceptive acts and practices in violation of CUTPA, General Statutes § 42-11Ob (a), et seq. The plaintiff' further alleges that the defendant "upon information and belief' has a general business practice of denying fire damage claims submitted by its insureds. The defendant moves to strike count seven on the ground that it fails to sufficiently allege facts demonstrating a "pattern or practice" on the part of the defendant.
Section 42-11Ob (a) provides in relevant part: "Unfair tradepractices prohibited. Legislative intent. (a) No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Section 42-11Ob (d) further provides that: "It is the intent of the legislature that this chapter be remedial and be so construed."
"The purpose of CUPTA is to protect the public from unfair practices in the conduct of any trade or commerce, and whether a practice is unfair depends upon the finding of a violation of an identifiable public policy." (Internal quotation marks omitted.)Willow Springs Condominium Assn., Inc. v. Seventh BRT DevelopmentCorp. , 245 Conn. 1, 42, 717 A.2d 77 (1998). "The entire act is remedial in character . . . and must be liberally construed in favor of those whom the legislature intended to benefit." (Citations omitted; internal quotation marks omitted.) Id.
In Mead v. Burns, 199 Conn. 651, 509 A.2d 11 (1986), the Connecticut Supreme Court held that the insurance industry was CT Page 7034 not exempt from CUTPA solely because the industry was regulated by CUIPA. Id., 662-63. The court further determined that conduct not constitute an unfair practice or act under CUIPA cannot survive scrutiny under CUTPA. Id., 665-66. The court emphasized that "[t]he definition of unacceptable insurer conduct in [CUIPA] reflects the legislative determination that isolatedinstances of unfair insurance settlement practices are not soviolative of the public policy of this state as to warrantstatutory intervention. Under CUTPA, as under CUIPA, a litigantis bound by this legislative determination." (Emphasis added.) Id., 666.
Subsequently, in Lees v. Middlesex Ins. Co., 229 Conn. 842,850, 643 A.2d 1282 (1991), the court reaffirmed Mead v. Burns. The court observed, "[i]n requiring proof that the insurer has engaged in unfair claim settlement practices with such frequency as to indicate a general business practice, the legislature has manifested a clear intent to exempt from coverage under CUIPA isolated instances of insurer misconduct. . . ." (Citation omitted; internal quotation marks omitted.) Id., 849. The court held that "the defendant's alleged improper conduct in the handling of a single insurance claim, without any evidence of misconduct by the defendant in the processing of any other claim, does not rise to the level of a `general business practice' as required by . . . [CUIPA]." Id.
The court also reaffirmed the requirement that CUTPA claims must meet the "general business practice' standard as promulgated in CUIPA. "In Mead v. Burns, . . . we concluded that a CUTPA claim based on an alleged unfair claim settlement practice prohibited by [CUIPA] required proof, as under CUIPA, that the unfair settlement practice had been committed or performed by the defendant `with such frequency as to indicate a general business practice.'" Id., 850.
Here, the plaintiff merely alleges that the defendant refused to pay him for the covered loss, failed to attempt to effectuate a settlement of the claim, and that "upon information and belief" the defendant maintained a general business practice of denying its insureds' fire damage claims. In Wiacek v. Safeco InsuranceCompany of America, Superior Court, judicial district of Danbury, Docket No. 329601 (March 31, 1998, Radcliffe, J.), a plaintiff sought payment under an insurance policy for injuries sustained in an automobile accident. The plaintiff alleged that based "upon information and belief," the defendant's conduct constituted a CT Page 7035 general business practice. The court held that "an allegation based upon "reasonable information and belief is properly viewed as a legal conclusion, particularly when the plaintiff has made no attempt to plead facts establishing any other instance or instance[s], to demonstrate the frequency of the alleged CUIPA violation." Id.
A plaintiff must allege facts establishing more than a single act of misconduct in order to rise to the level of a general business practice. See Ruther v. Continental Insurance Co., Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. 155186 (April 23, 1998, Lewis, 3.); PutnamResources v. Frenkel Co., Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. 123838 (July 20, 1993, Lewis, 3.); Denitto v. Transamerica Insurance, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 266438 (December 2, 1992, Lewis, J.). Physicians Health Serv. v.Dziurzvnski, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 284492 (July 13, 1992, Lewis, 3.);Lanalais v. Guardian Life Insurance Co., Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 252826 (July 7, 1992, Lewis, 3.). See also Wapnick v. CB Landscaping, Inc., Superior Court, judicial district of New Haven at New Haven, Docket No. 412410 (August 5, 1998, Moran, 3.) (motion to strike granted where plaintiff alleges a CUTPA claim based on defendant's single act of denying plaintiffs insurance claim);National Publishing. Co. v. Hartford Fire Ins., Superior Court, judicial district of Stamford-Norwalk, Docket No. 156478 (March 25, 1998, D'Andrea, 3.) (motion to strike granted where plaintiff merely alleges that defendant rejected plaintiffs claims involving one particular loss); Genovese Enterprises v. SphereDrake Ins., Superior Court, judicial district of Waterbury at Waterbury, Docket No. 128855 (September 9, 1996, Pellegrino, 3.) (motion to strike granted where plaintiff conclusorily alleges that defendant engaged in multiple acts of misconduct in settling plaintiffs claim, and "based upon information and belief" defendant committed other acts of insurer misconduct with others' claims).
The plaintiff conclusorily alleges that the defendant has a general business practice of denying its insureds' fire damage claims, without making any attempt to plead facts supporting such an allegation. Accordingly, the court grants the defendant's motion to strike count seven of the first amended complaint. CT Page 7036
 Count Eight
Count eight alleges that the defendant violated CUIPA, General Statutes § 38a-816 (6). The defendant seeks to strike count eight on two grounds. First, the defendant contends that the plaintiff has failed to allege facts demonstrating a "pattern or practice," and, secondly, that CUIPA does not provide for a private right of action.
As discussed, supra, it is necessary under CUIPA for the plaintiff to allege a general business practice. The plaintiffs allegations in count eight are identical to the allegations set forth in count seven. Because the allegations were not sufficient to establish a general business practice under CUTPA, they are also insufficient under CUIPA.
Therefore, the defendant's motion to strike count eight is granted.
Karazin, J.
This court took this motion after Judge Lewis recused himself. It was this courts understanding that its decision would be rendered on the papers without oral arguments.