GEORGE A. THOMPSON, TRUSTEE *v.*
DAVID ORCUTT ET AL.
(AC 19769)

Schaller, Pellegrino and Dupont, Js.

Submitted November 1, 2001—officially released June 18, 2002

*Clifton E. Thompson* filed a brief for the appellant (plaintiff).

*Bruce S. Beck* filed a brief for the appellees (named defendant et al.).

*Opinion*

PELLEGRINO, J. This foreclosure action comes to us on remand from our Supreme Court. *Thompson* v. *Orcutt*, 257 Conn. 301, 777 A.2d 670 (2001). The plaintiff, George A. Thompson, trustee, previously appealed to this court from the judgment of the trial court determining that he had unclean hands, and ordering him to release a mortgage and the underlying note to the defendants, David Orcutt and Sandra Orcutt. We reversed the judgment on the ground that the doctrine of unclean hands did not apply as a defense to the plaintiff's foreclosure of the mortgage because the wrong committed by the plaintiff was not in connection with the matter before the court. *Thompson* v. *Orcutt*, 59 Conn. App. 201, 205–206, 756 A.2d 332 (2000). Our Supreme Court granted certification and upon review concluded that the clean hands doctrine is applicable to the plaintiff in the present action and that public policy considerations support application of the doctrine. *Thompson* v. *Orcutt*, supra, 257 Conn. 313–14, 316–18. The court directed us on remand to address the remaining issues raised by the plaintiff.

On appeal, the plaintiff's remaining claims are that the trial court improperly (1) found his partner, Jack L. Rosenblit, had unclean hands, (2) ordered the plaintiff to release a mortgage and the underlying note to the defendants, (3) ordered the plaintiff to provide a valid release of a lien in favor of Northeast Financial Services, (4) found that there was no trust agreement between the plaintiff and Rosenblit, and (5) overlooked the appearance in the foreclosure action of the bankruptcy trustee, John J. O'Neil, Jr. We affirm, in part, and reverse, in part, the judgment of the trial court.[1]

The following factual and procedural history is relevant to our resolution of the plaintiff's appeal. "The plaintiff commenced this action against the defendants to foreclose on a mortgage that secured a note, the original balance of which was $25,000. The note was signed by the defendant David Orcutt as president of Alpha Equipment Sales and Rentals, Inc., and by the defendants individually and severally. The note was secured by a mortgage (Thompson mortgage) on property owned by the defendants known as 95 Greenwood Drive in Manchester, which mortgage was the subject of the foreclosure action. Although the plaintiff claimed that he was the trustee of that mortgage for himself and Jack L. Rosenblit, a business associate, no written trust agreement existed. . . .

"The mortgaged premises were subject to three encumbrances superior to the Thompson mortgage: A first mortgage to the New Haven Savings Bank in the amount of $60,000, a second mortgage in favor of the Connecticut Bank and Trust Company in the amount of $35,000 and a lien in favor of Northeast Financial Services (Northeast) [in the amount of $32,712]. The principals of Northeast were the plaintiff and Rosenblit,

[1] We agree with the plaintiff's first and second claims. We disagree, however, with the remaining claims raised by the plaintiff.

and [although] the debt securing the mortgage to Northeast [had been] paid prior to the creation of the Thompson mortgage, [the lien] had not been released.

"In January, 1992, the plaintiff filed a voluntary petition in [chapter 7] bankruptcy in the United States Bankruptcy Court for the District of Connecticut, listing as an asset a one-half interest in the Thompson mortgage. The [B]ankruptcy [C]ourt appointed [a bankruptcy trustee to administer the bankruptcy] estate. . . .

"During the pendency of the bankruptcy case, the plaintiff represented to the bankruptcy trustee that the property securing the Thompson mortgage was encumbered in excess of its value . . . . On the basis of that representation, the bankruptcy trustee abandoned the Thompson mortgage as an asset of the bankruptcy estate because it '[did] not justify further administration.' See 11 U.S.C. § 554 (a) (bankruptcy trustee may abandon property of estate 'that is burdensome to the estate or that is of inconsequential value and benefit to the estate').

"In their answer to the foreclosure complaint, the defendants admitted the existence of the debt, and the execution of the loan agreement and mortgage deed, but filed a special defense asserting that the plaintiff was guilty of unclean hands insofar as he had induced the bankruptcy trustee to abandon the [Thompson mortgage]. . . . The trial court concluded that the plaintiff had committed misrepresentation or fraud in the bankruptcy case. The trial court determined that because the misrepresentation or fraud concerned the Thompson mortgage, and that mortgage was the subject of the plaintiff's foreclosure action, the clean hands doctrine could apply. Although the trial court recognized that the clean hands doctrine generally applies only where the wrong [has been] done to the party against whom [affirmative] relief is sought, and the

plaintiff's conduct in this case had occurred in the [B]ankruptcy [C]ourt, the trial court determined that the plaintiff's misrepresentation or fraud in the bankruptcy case involved an important public interest that justified a broader application of the doctrine. Accordingly, the trial court applied the clean hands doctrine, denied the relief sought by the plaintiff, and rendered judgment for the defendants. In addition, the trial court ordered the plaintiff to release the Northeast lien." (Citations omitted; internal quotation marks omitted.) *Thompson* v. *Orcutt*, supra, 257 Conn. 303–305.

I

The plaintiff first claims that the court improperly found that Rosenblit had unclean hands. We agree.

"[A]pplication of the doctrine of unclean hands rests within the sound discretion of the trial court. . . . The exercise of [such] equitable authority . . . is subject only to limited review on appeal. . . . The only issue on appeal is whether the trial court has acted unreasonably and in clear abuse of its discretion. . . . In determining whether the trial court abused its discretion, this court must make every reasonable presumption in favor of [the trial court's] action." (Citations omitted; internal quotation marks omitted.) Id., 308.

The trial court's judgment was based on the plaintiff's fraudulent conduct during the administration of his bankruptcy estate. The doctrine of unclean hands permits a court of equity to deny relief to a party whose claim "grows out of or depends upon or is inseparably connected with *his own* prior fraud . . . ." (Emphasis added; internal quotation marks omitted.) Id., 312. The defendants asserted the defense of unclean hands against Rosenblit as a beneficiary of the plaintiff's fraud. The trial court found that Rosenblit had unclean hands "since he was and is the active partner with [the plain-

tiff] concerning this mortgage."[2] The court did not directly address whether Rosenblit benefited from the plaintiff's fraud. In essence, therefore, the claim before this court requires us to address two separate possible justifications for applying the clean hands doctrine to Rosenblit. The first ground is the reason adopted by the trial court, i.e., the mere incidence of partnership between the plaintiff and Rosenblit. The second is the argument advanced by the defendants that Rosenblit benefited from the plaintiff's fraud.

Because the defendants seek the application of the clean hands doctrine to deny relief to the business partner of the party whose fraudulent conduct is at issue, we refer to well established principles of partnership law concerning liability for a partner's actionable conduct. To hold the partnership liable for a fraud committed by one partner, the fraud must have been committed in the course of partnership business. General Statutes § 34-326; 59A Am. Jur. 2d, Partnership § 667 (1987). In general, to hold one liable for the tortious conduct of his partner, "[t]he connection with the partnership business or objective must rise above the level of mere speculation or surmise in order to establish a partnership purpose in the tortfeasor's conduct. [59A Am. Jur. 2d, supra] § 651." (Internal quotation marks omitted.) *Sheridan* v. *Desmond*, 45 Conn. App. 686, 692, 697 A.2d 1162 (1997).

## A

We first inquire into whether the plaintiff's fraud occurred within the ordinary scope of partnership business. We conclude that it did not.

To conclude that the plaintiff's conduct occurred within the scope of partnership business, that conduct

---

[2] The court found that the plaintiff had established that he was acting as a partner on behalf of a partnership consisting of himself and Rosenblit.

must have (1) occurred substantially within the authorized time and geographic limits of the partnership, (2) been the kind of activity that a person engaged in the particular business would perform and (3) been motivated at least in part by a purpose to serve the partnership. See id., 692–94. The plaintiff's conduct fails to satisfy the second and third factors. The partnership between the plaintiff and Rosenblit was engaged in the business of mortgage lending. The fraud complained of occurred in the context of the plaintiff's personal, chapter 7 bankruptcy proceeding. As such, the conduct bore no relation to the type of activity typically involved in mortgage lending.

Additionally, we find that the conduct was not motivated by a purpose to serve the partnership. Only the plaintiff's half-interest in the subject mortgage was before the Bankruptcy Court for consideration as an asset of the bankruptcy estate, and the plaintiff's fraudulent misrepresentations were explicitly directed only at that half-interest. Because the asset at issue was limited to the plaintiff's interest in the partnership's mortgage, the plaintiff's sole motive in misleading the bankruptcy trustee could only have been preserving that personal interest.

"Ordinarily, the determination of whether one is acting within the scope of partnership business is a question of fact. . . . Where, however, it is clear that one is not acting within the scope of employment, the question becomes one of law." (Citations omitted.) Id., 695. We conclude, as a matter of law, that the plaintiff's fraud took place outside the scope of the partnership's business.

B

We must next determine whether Rosenblit benefited from the plaintiff's fraudulent conduct. We conclude that he did not.

We first briefly note the defendants' argument with respect to that issue. The defendants argue that the plaintiff's fraudulent misrepresentation to the bankruptcy trustee took place as an agent of the partnership because it was necessary to preserve Rosenblit's one-half interest in the mortgage. Therefore, they argue that because the fraud was alleged to have benefited both partners, both partners equitably may be barred from pursuing foreclosure of the mortgage, regardless of the plaintiff's motive. We are not convinced.

We note that no evidence was presented at trial that implicated Rosenblit in the plaintiff's fraud. Further, an independent analysis reveals no possible motive for Rosenblit to have participated in the plaintiff's fraud because there was no benefit to be gained by him. Notwithstanding the fact that the fraud concerned an asset of the partnership, the fraud took place in the context of the plaintiff's personal, chapter 7 bankruptcy proceedings. Even in the absence of the plaintiff's fraud, Rosenblit's interest in the mortgage was not subject to attachment by the plaintiff's creditors in bankruptcy. A creditor of one partner in his individual capacity may obtain satisfaction of the debt owed him only from the debtor's share in the partnership property. *Robinson* v. *Security Co.*, 87 Conn. 268, 281, 87 A. 879 (1913); *Witter* v. *Richards*, 10 Conn. 37, 40 (1833). Even if we assume, therefore, that the mortgage had been duly administered as an asset of the bankruptcy estate, the plaintiff's personal creditors would have been able to claim only against the plaintiff's one-half interest.

In determining that the clean hands doctrine should bar the plaintiff from foreclosing on the property, our Supreme Court noted that it was the plaintiff's fraud that allowed him to retain his interest in the Thompson mortgage. *Thompson* v. *Orcutt*, supra, 257 Conn. 316. Although the plaintiff's fraud allowed him personally to retain an interest in the mortgage, the fraud had

no effect on Rosenblit's interest. Rosenblit would have retained a one-half interest in the Thompson mortgage with or without the plaintiff's fraud.

Because there is no evidence that the plaintiff's business partner was involved with, or benefited from, the fraud that the plaintiff perpetrated on the Bankruptcy Court in the course of his personal bankruptcy proceeding, the trial court could not reasonably have found that Rosenblit was guilty of unclean hands. Accordingly, we conclude that the court improperly applied the clean hands doctrine to Rosenblit as a bar to his future pursuit of his interest in the subject note and mortgage.

II

The plaintiff next claims that the court improperly ordered him to release the subject mortgage and note to the defendants. We agree to the extent that the release ordered by the court was overbroad in that it improperly prejudiced the interest of the plaintiff's business partner in the subject note and mortgage.

We review the plaintiff's claim under an abuse of discretion standard. "This court will reverse a trial court's exercise of its equitable powers only if it appears that the trial court's decision is unreasonable or creates an injustice. . . . [E]quitable power must be exercised equitably . . . [but] [t]he determination of what equity requires in a particular case, the balancing of the equities, is a matter for the discretion of the trial court." (Citations omitted; internal quotation marks omitted.) *Connecticut Bank & Trust Co.* v. *Winters*, 225 Conn. 146, 161–62, 622 A.2d 536 (1993).

"Since a mortgage foreclosure is an equitable proceeding, either a forfeiture or a windfall should be avoided if possible. In a foreclosure proceeding the trial court must exercise its discretion and equitable powers with fairness not only to the foreclosing mortgagee,

but also to subsequent encumbrancers and the owner." (Internal quotation marks omitted.) *Farmers & Mechanics Savings Bank* v. *Sullivan*, 216 Conn. 341, 354, 579 A.2d 1054 (1990). The trial court in a foreclosure action has broad discretion in determining whether to permit a foreclosure or to lessen the stated indebtedness. *Hamm* v. *Taylor*, 180 Conn. 491, 497, 429 A.2d 946 (1980); *Gulack* v. *Gulack*, 30 Conn. App. 305, 317–18, 620 A.2d 181 (1993).

Here, the court found that the plaintiff had induced the bankruptcy trustee to abandon the mortgage as an asset of the bankruptcy estate by fraudulently misrepresenting the value of the mortgage. The court also found, however, that the defendants themselves did not suffer any adverse consequences as a result of the plaintiff's fraud. On the contrary, the court found that but for that fraud, the mortgage properly would have been administered as an asset of the bankruptcy estate and that the bankruptcy trustee would have foreclosed the mortgage for the benefit of the plaintiff's creditors in bankruptcy.

As those circumstances suggest, had the bankruptcy trustee foreclosed the mortgage, the defendants' debt to the plaintiff would have been extinguished. In light of the plaintiff's fraud, equity requires that he retain no greater interest in the note than if that asset had been made a part of his bankruptcy estate, as it properly should have been, and disposed of accordingly. To allow the plaintiff to retain his interest in the note and to collect on the underlying debt would be tantamount to a judicial sanction of a legal fraud. Accordingly, we conclude that the court had the authority to release the note under the circumstances of the present case, and that such release was not an abuse of the court's discretion as it pertains to the plaintiff's interest in the note and mortgage. The matter stands on a different footing, however, with respect to Rosenblit's interest in the mortgage.

The court improperly concluded that the plaintiff's partner, Rosenblit, was barred from pursuing his interest in the note and mortgage. Because we have concluded that the clean hands doctrine does not bar Rosenblit from pursuing either the equitable or legal remedies available to him to enforce his rights with respect to the subject note and mortgage, it would work an obvious injustice to deny Rosenblit the opportunity to pursue such remedies by extinguishing the debt through judicial fiat.

"Courts of equity will not permit one seeking to repudiate a deed or contract to gain any undue advantage over other innocent parties to it . . . ." *Nichols* v. *Nichols*, 79 Conn. 644, 653, 66 A. 161 (1907). Having found that the mortgage was an asset of the partnership between the plaintiff and Rosenblit, the court was bound by the principles of equity to comport its judgment with the interest of the plaintiff's business partner in the mortgage. The court's unconditional release of the mortgage and note to the defendants was unreasonable and created an injustice by depriving Rosenblit, as an innocent party, of his interest in the mortgage and the possibility of recovering on the partnership's loan to the defendants.[3]

We are mindful that the release of the plaintiff's interest in the Thompson note and mortgage to the defendants may frustrate the ability of the plaintiff's bankruptcy creditors to collect on the debt. That difficulty, however, is at least partially of the creditors' own making. The creditors have had two opportunities to claim the asset and have been delinquent in both instances. First, it appears from the record that the

[3] We note as well that to fail to acknowledge the interest of the plaintiff's business partner and to grant an absolute release of the subject mortgage and note would be tantamount to the unjust enrichment of the defendants insofar as it would discharge them of all liability on the mortgage loan after having received the full benefit of that loan.

bankruptcy trustee failed independently to assess the value of the subject mortgage during the bankruptcy proceeding itself, relying instead on the plaintiff's representations. Second, after having been joined to this action as an indispensable party, the bankruptcy trustee failed to prosecute his claim with the requisite diligence and was defaulted. "It is a general rule of equity that he who seeks the aid of equity must show that he has used reasonable diligence in asserting his rights and demanding their protection, and unreasonable delay in seeking the aid of a court of equity will generally prove a bar to the exercise of the jurisdiction." 2 J. Pomeroy, Equity Jurisprudence (5th Ed. 1941) § 418 n.2. Because equity aids the vigilant, we see no reason to be more solicitous of the bankruptcy creditors' interest in the Thompson mortgage than were the creditors themselves.

Accordingly, we conclude that the proper disposition of the plaintiff's claim requires the release of the plaintiff's interest in the note and mortgage only and the corresponding reduction of the defendants' liability on the mortgage note only to the extent that such obligation represents the plaintiff's share of the partnership's loan to the defendants. Although it appears from the record that the appropriate course of action consistent with that objective would be to reduce the defendants' liability on the note by half, the trial court on remand must determine the exact amount of the defendants' outstanding liability on the debt based on Rosenblit's interest in the loan. Because the mortgage secures the loan in total, rather than any specific portion of it, the mortgage itself should remain in place as security for the defendants' continuing liability to Rosenblit on the partnership loan.

### III

The plaintiff also claims that the court improperly ordered him to provide a valid release of a lien held by Northeast on the subject property. We disagree.

"A foreclosure action is an equitable proceeding. . . . The determination of what equity requires is a matter for the discretion of the trial court. . . . In determining whether the trial court has abused its discretion, we must make every reasonable presumption in favor of the correctness of its action. . . . Our review of a trial court's exercise of the . . . discretion vested in it is limited to the questions of whether the trial court correctly applied the law and could reasonably have reached the conclusion that it did." (Citations omitted; internal quotation marks omitted.) *Citicorp Mortgage, Inc.* v. *Conant*, 54 Conn. App. 529, 532, 736 A.2d 928, cert. denied, 251 Conn. 909, 739 A.2d 264 (1999).

"The governing motive of equity in the administration of its remedial system is to grant full relief, and to adjust in the one suit the rights and duties of all the parties, which really grow out of or are connected with the subject-matter of that suit . . . . 1 J. Pomeroy, [supra, § 114] . . . . Equity regards as done what ought to be done . . . or which ought to have been done." (Citations omitted; internal quotation marks omitted.) *Natural Harmony, Inc.* v. *Normand*, 211 Conn. 145, 149, 558 A.2d 231 (1989).

"Because [f]oreclosure is peculiarly an equitable action . . . the court may entertain such questions as are necessary to be determined in order that complete justice may be done. . . . In a foreclosure proceeding, the trial court may examine all relevant factors to ensure that complete justice is done. . . . The determination of what equity requires in a particular case, the balancing of the equities, is a matter for the discretion of the trial court." (Citation omitted; internal quotation marks omitted.) *Amresco New England II, L.P.* v. *Colossale*, 63 Conn. App. 49, 55, 774 A.2d 1083 (2001). "The rule that equity, having taken jurisdiction for one purpose, will hear all issues is applied to cases in which the court, on a proper ground for the intervention of

equity, has taken jurisdiction in respect to questions concerning partnership matters. 1 J. Pomeroy, [supra] §§ 114, 239." *Maruca* v. *Phillips*, 139 Conn. 79, 83, 90 A.2d 159 (1952).

The court found that the mortgaged premises were subject to three encumbrances superior to the Thompson mortgage, one of which was a lien in favor of Northeast. The principals of Northeast are the plaintiff and Rosenblit. The parties do not dispute that the lien held by Northeast had been paid but never was released. The plaintiff, however, claims that the court did not have personal jurisdiction over Northeast and, therefore, that the order concerning Northeast was improper. That argument is without merit.

The plaintiff invoked the equity jurisdiction of the court to adjudicate a claim of the partnership. Having found that the lien encumbering the subject property also was an asset of the partnership and that it had been discharged, it was well within the court's sound discretion to adjudicate the release of that lien.

IV

The plaintiff claims that the court improperly found that there was no trust agreement between himself and Rosenblit. We disagree. The existence of a trust agreement is a question of fact for the trial court. "To the extent that the court has made findings of fact, our review is limited to deciding whether such findings are clearly erroneous. See Practice Book § 60-5; *Pandolphe's Auto Parts, Inc.* v. *Manchester*, 181 Conn. 217, 221–22, 435 A.2d 24 (1980)." *Belanger* v. *Planning & Zoning Commission*, 64 Conn. App. 184, 188–89, 779 A.2d 833 (2001).

In its memorandum of decision, the court stated: "The court further finds that there was no trust agreement, and the plaintiff's title of trustee is nothing more than

a sham, that the owners of said mortgage were and are the plaintiff, George A. Thompson, and Jack Rosenblit . . . ." In its subsequent articulation, the court stated that the "[p]laintiff established that he was acting . . . as a partner on behalf of a partnership in which he and Jack Rosenblit were partners.

Upon review of both the transcript of the hearing before the court and the articulation provided in response to the defendants' request, we conclude that the court's finding in that regard is unclear and ambiguous. Although the court denied the existence of a trust relationship between the plaintiff and Rosenblit, the court nevertheless found that they were business partners and that the subject mortgage had been entered into in the course of that partnership. Given that factual finding, it is unclear what significance, if any, the alleged trust relationship, or lack thereof, could have to the issues facing this court.

"It is a well established principle of appellate procedure that the appellant has the duty of providing this court with an adequate record to afford review. . . . Where the factual or legal basis of the trial court's ruling is unclear, the appellant should seek articulation pursuant to Practice Book § 4051 [now § 66-5]. . . . [W]e read an ambiguous record, in the absence of a motion for articulation, to support rather than to undermine the judgment." (Citations omitted; internal quotation marks omitted.) *State* v. *Marquis*, 36 Conn. App. 803, 804, 653 A.2d 833, rev'd on other grounds, 235 Conn. 659, 668 A.2d 710 (1995). Although in the present case an articulation was requested and provided, the effect of the articulation is to cloud as much as it clarifies. The plaintiff failed to file a motion for review. Accordingly, we must assume that the trial court's finding was proper.

## V

The plaintiff's final claim is that the court improperly overlooked the appearance of the bankruptcy trustee and defaulted him for failure to appear. We disagree.

Entry of a default for failure to appear for trial is a matter left to the sound discretion of the trial court. *Brunswick School, Inc.* v. *Hutter*, 53 Conn. App. 455, 459, 730 A.2d 1206 (1999). Practice Book § 17-19 provides in relevant part: "If a party . . . fails without proper excuse to appear in person or by counsel for trial, the party may be nonsuited or defaulted by the judicial authority." In response to the defendants' motion for articulation, the trial court stated that the bankruptcy trustee had been defaulted for failure to appear at trial. Apart from the entry of a formal appearance on February 23, 1999, O'Neil did not submit any pleadings in the case, did not appear on the scheduled trial date and has not filed a motion to open the default. We conclude that the court did not abuse its discretion in defaulting O'Neil for his failure to appear at trial.

The judgment is reversed with respect to the holding that Rosenblit had unclean hands and the absolute release of the subject mortgage and note to the defendants and the case is remanded for further proceedings to determine the amount of the defendants' outstanding liability on the subject note consistent with this opinion. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.