# ANN BARRETT *v.* HEBREW HOME AND HOSPITAL, INC.
## (AC 22231)

Flynn, Bishop and West, Js.

Argued May 30—officially released October 29, 2002

*James V. Sabatini*, with whom, on the brief, was *Vincent F. Sabatini*, for the appellant (plaintiff).

*Michael Kurs*, with whom was *Alan I. Scheer*, for the appellee (defendant).

*Opinion*

WEST, J. This appeal arises out of an action brought by the plaintiff, Ann Barrett, pursuant to General Statutes § 31-290a,[1] against her former employer, the defen-

---

[1] General Statutes § 31-290a provides: "(a) No employer who is subject to the provisions of this chapter shall discharge, or cause to be discharged, or in any manner discriminate against any employee because the employee has filed a claim for workers' compensation benefits or otherwise exercised the rights afforded to him pursuant to the provisions of this chapter.

"(b) Any employee who is so discharged or discriminated against may either: (1) Bring a civil action in the superior court for the judicial district where the employer has its principal office for the reinstatement of his previous job, payment of back wages and reestablishment of employee benefits to which he would have otherwise been entitled if he had not been discriminated against or discharged and any other damages caused by such discrimination or discharge. The court may also award punitive damages. Any employee who prevails in such a civil action shall be awarded reasonable attorney's fees and costs to be taxed by the court; or (2) file a complaint with the chairman of the Workers' Compensation Commission alleging violation of the provisions of subsection (a) of this section. Upon receipt of any such complaint, the chairman shall select a commissioner to hear the complaint, provided any commissioner who has previously rendered any decision concerning the claim shall be excluded. The hearing shall be held in the workers' compensation district where the employer has its principal office. After the hearing, the commissioner shall send each party a written copy of his decision. The commissioner may award the employee the reinstatement of his previous job, payment of back wages and reestablishment of employee benefits to which he otherwise would have been eligible if he had not been discriminated against or discharged. Any employee who prevails in such a complaint shall be awarded reasonable attorney's fees. Any party aggrieved by the decision of the commissioner may appeal the decision to the Appellate Court."

dant, Hebrew Home and Hospital, Inc., alleging that the defendant wrongfully terminated her employment because, prior to her discharge, she had filed claims for workers' compensation benefits or otherwise exercised her workers' compensation rights. The trial court rendered judgment in accordance with the jury's verdict in favor of the defendant. On appeal, the plaintiff claims that the court improperly (1) instructed the jury and (2) denied her motion to set aside the verdict.[2] We affirm the judgment of the trial court.

The jury reasonably could have found the following facts from the evidence presented at trial. During 1984, the plaintiff was hired by the defendant as a certified nursing assistant (nursing assistant).[3] A nursing assistant's primary responsibility, as set forth in a written job description, was to take care of patients, including, inter alia, turning and lifting, where necessary, some very debilitated and some very heavy total care residents. Throughout the period of the plaintiff's employment, the defendant maintained a written policy against the assignment of nursing assistants to permanent light duty.

On September 8, 1993, while assisting a patient, the plaintiff injured her neck and right shoulder. Subse-

---

[2] The plaintiff articulated her claims as follows: "1. Did the trial court adequately set out the three-step 'shifting-burden analysis' test. 2. Did the trial court err in failing to set out the elements of a prima facie case of retaliatory discharge (first step of shifting-burden analysis). 3. Did the trial court err in not instructing the jury how the plaintiff could demonstrate a casual connection between filing a workers' compensation claim and being terminated (part [b] of the first step, prima facie case). 4. Did the trial court err in instructing the jury that it should answer the second interrogatory question in the affirmative (second step of shifting burden analysis). 5. Did the trial court err in instructing the jury on the third step of the shifting burden analysis test. 6. Did the trial court err in refusing to set aside the verdict."

[3] The plaintiff claims to have been a nurse assistant at the time she was hired by the defendant, but she did not possess the requisite certificate. She obtained the certificate in 1990.

quently, she filed a workers' compensation claim, and several months later, as a result of those injuries, she was placed on light duty for approximately one month. On February 6, 1995, the plaintiff underwent an independent medical examination, was diagnosed as having a chronic cervical sprain and was assigned a 2.5 percent permanent partial disability of the cervical spine. Thereafter, during July, 1996, the plaintiff suffered injuries to her back and leg and again sought workers' compensation benefits. As a consequence of those injuries, the plaintiff's physician indicated that she should be assigned to light duty. The plaintiff performed a light duty assignment until her dismissal by the defendant on November 25, 1996. Her employment was terminated after the defendant was advised by the plaintiff's physician that the plaintiff had a permanent lifting restriction requiring that she be assigned to permanent light duty in contravention of the defendant's written policy.

Subsequently, the plaintiff brought an action claiming wrongful termination of her employment. The court instructed the jury and, in doing so, directed the jury to answer "yes" to the second of four interrogatories given to the jury to assist it in reaching its verdict.[4]

---

[4] The jury was asked to answer the following questions in rendering its verdict:

"1. Has [the plaintiff] offered evidence from which you can conclude that the [the defendant's] termination of her employment was in retaliation for her filing claims for workers' compensation or otherwise exercising her rights under the Workers' Compensation Act?

___ YES _X_ NO

If YES, continue to question #2. If NO, complete Defendant's Verdict Form.

"2. Has the [the defendant] produced evidence that the termination of [the plaintiff] was based on a legitimate, non-retaliatory reason?

_X_YES ___ NO

Continue to question #3.

"3. Has [the plaintiff] proven by a preponderance of the evidence, that is, that it is more likely than not, that the reason given by [the defendant] is not worthy of belief and was not the real reason for terminating her employment?

___ YES ___ NO

If YES, continue to question #4. If no, complete Defendant's Verdict Form.

Specifically, the court instructed the jury to answer "yes" that the defendant had produced evidence that its termination of the plaintiff's employment was based on a legitimate, nonretaliatory reason. The jury returned the interrogatories, having answered "yes" to the second, as directed, and "no" to the first, and returned a verdict in favor of the defendant, which the plaintiff thereafter moved to set aside. The court denied the motion and rendered judgment in accordance with the jury's verdict. The plaintiff appealed. Other facts will be discussed where relevant.

I

The plaintiff's first claim is that the court improperly instructed the jury regarding the three step, shifting burden analysis adopted by our Supreme Court in *Ford* v. *Blue Cross & Blue Shield of Connecticut, Inc.*, 216 Conn. 40, 53–54, 578 A.2d 1054 (1990).[5] As a consequence of the court's allegedly improper instruction, the plaintiff claims that she was "unquestionably harmed" such that her motion to set aside the verdict should have been granted. We disagree.

"Our standard of review concerning claims of instructional error is well settled. [J]ury instructions must be read as a whole and . . . are not to be judged in artificial isolation from the overall charge. . . . The whole

---

"4. Has [the plaintiff] proven by a preponderance of the evidence, that is, that it is more likely than not, that the real reason for her employment being terminated was in retaliation for her previously filing a claim for workers' compensation or otherwise exercising her rights under the Workers' Compensation Act [General Statutes § 31-275 et seq.]?

___ YES ___ NO

If YES, complete Plaintiff's Verdict Form. If no, complete Defendant's Verdict form."

[5] In *Ford* v. *Blue Cross & Blue Shield of Connecticut, Inc.*, supra, 216 Conn. 53–54, our Supreme Court adopted for use in actions under General Statutes § 31-290a the basic allocation of burdens and the order of presentation of proof set forth by the United States Supreme Court in *McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).

charge must be considered from the standpoint of its effect on the jurors in guiding them to a proper verdict . . . and not critically dissected in a microscopic search for possible error. . . . The instruction must be adapted to the issues and may not mislead the jury but should reasonably guide it in reaching a verdict. . . . We must review the charge as a whole to determine whether it was correct in law and [whether it] sufficiently guided the jury on the issues presented at trial. . . .

"Our standard of review on this claim is whether it is reasonably probable that the jury was misled. . . . The test of a court's charge is not whether it is as accurate upon legal principles as the opinions of a court of last resort but whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . Therefore, jury instructions need not be exhaustive, perfect, or technically accurate. Nonetheless, the trial court must correctly adapt the law to the case in question and must provide the jury with sufficient guidance in reaching a correct verdict." (Internal quotation marks omitted.) *Marshall* v. *O'Keefe*, 55 Conn. App. 801, 804–805, 740 A.2d 909 (1999), cert. denied, 252 Conn. 918, 744 A.2d 438 (2000).

The plaintiff contends that her proposed charge, or one substantially similar to it, should have been given to the jury because her charge reviewed the elements of a prima facie case, informed the jury as to how she could have demonstrated a causal connection between the filing of a workers' compensation claim and the termination of her employment by the defendant, and it explained that she had the opportunity to show that the defendant's proffered nondiscriminatory reasons for her discharge were a pretext. The plaintiff claims that her requested charge was adequate and proper while the court's charge to the jury was deficient and

misleading. Of course, the question under consideration by this court, in that regard, is not whether the trial court should have given the proposed charge to the jury, but whether the instructions that were given were correct in law, adapted to the issues, sufficient for the guidance of the jury and "whether it is reasonably probable that the jury was misled." (Internal quotation marks omitted.) *Geary* v. *Wentworth Laboratories, Inc.*, 60 Conn. App. 622, 625, 760 A.2d 969 (2000). Furthermore, "[a] refusal to charge in the exact words of a request will not constitute error if the requested charge is given in substance." (Internal quotation marks omitted.) *Bovat* v. *Waterbury*, 258 Conn. 574, 592, 783 A.2d 1001 (2001).

To determine whether the court charged the jury in accordance with the law we look to the rule established in *Ford* v. *Blue Cross & Blue Shield of Connecticut, Inc.*, supra, 216 Conn. 53–54, which is applicable in retaliatory discharge cases, including those brought pursuant to § 31-290a. "The plaintiff bears the initial burden of proving by the preponderance of the evidence a prima facie case of discrimination. [*McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)]. In order to meet this burden, the plaintiff must present evidence that gives rise to an inference of unlawful discrimination. *Texas Department of Community Affairs* v. *Burdine*, 450 U.S. 248, 252–53, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981). If the plaintiff meets this initial burden, the burden then shifts to the defendant to rebut the presumption of discrimination by producing evidence of a legitimate, nondiscriminatory reason for its actions. *McDonnell Douglas Corporation* v. *Green*, supra [802]. If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted, and the factual inquiry proceeds to a new level of specificity. *Texas Department of Community Affairs* v. *Burdine*, supra,

255. The plaintiff then must satisfy her burden of persuading the factfinder that she was the victim of discrimination either directly by persuading the court [or jury] that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence. Id., 256; see *McDonnell Douglas Corporation* v. *Green*, supra, 804–805." (Internal quotation marks omitted.) *Ford* v. *Blue Cross & Blue Shield of Connecticut, Inc.*, supra, 53–54.

Although the plaintiff asks this court to examine each of the three steps in the *Ford* test, we need only address the first two steps here because they are dispositive of her claims.[6] The relevant inquiry with respect to the plaintiff's appeal is whether the court failed to charge the jury as to the first step of the *Ford* test and, second, whether the court improperly charged the jury to find that the defendant had discharged the plaintiff for a legitimate, nonretaliatory reason.

With respect to the plaintiff's first instructional claim, we have reviewed the court's charge as to the first step of the *Ford* test and conclude that it was adapted to the evidence and correct in the law.[7] After explaining

---

[6] The *Ford* test is in three parts. The jury need not consider steps two and three if it determines that the plaintiff has failed to make out a prima facie case. See footnote 4, jury interrogatory number one. Because the jury concluded that the plaintiff had failed to make out a prima facie case, we need not address the plaintiff's claims as to the third step of the *Ford* test. We address the second step because the court directed the jury to answer the question and then consider the first step.

[7] The court instructed the jury in relevant part as follows: "In deciding whether the [defendant] intentionally retaliated against [the plaintiff], you must determine what motivated [the plaintiff's supervisor, Kathy] Hamlin and the other agents of the [defendant] who participated in the decision to terminate her employment.

"In retaliatory termination cases like this one, the courts have set out a three step process for juries to use in considering a claim that an employee has been unlawfully terminated.

"First, you must determine whether [the plaintiff] has offered evidence from which you could conclude or infer that the [defendant] retaliated against her in November of 1996 because she had previously filed claims for workers' compensation benefits or otherwise exercised her rights.

direct and circumstantial evidence, the court marshaled the evidence presented by the plaintiff and instructed that "[f]irst, you must determine whether [the plaintiff] has offered evidence from which you could conclude or infer that the [defendant] retaliated against her in November of 1996 because she had previously filed claims for workers' compensation benefits or otherwise exercised her rights." That instruction corresponded with the first of the four jury interrogatories. On the basis of our review, we conclude that the court's instruction was not likely to have confused the jury as to the elements of a prima facie case, which is the first step of the burden shifting analysis test.

The plaintiff's second claim is that the court's charge as to the second step of the *Ford* test was improper because the court instructed the jury that the defendant had proven that its reason for discharging the plaintiff was nonretaliatory and to answer the second interrogatory in the defendant's favor, thus directing the jury verdict.

The relevant facts from the pertinent part of the court's charge follow. "If the plaintiff, in your opinion, has met her burden of offering evidence from which you could conclude that she was terminated in retaliation for filing workers' compensation claims or otherwise exercising her rights, you must next consider whether the [defendant] has offered any nonretaliatory reason for terminating [the plaintiff's employment].

"The [defendant] has satisfied its burden so long as it offered an explanation that its decision was based on factors other than [the plaintiff's] filing for workers'

---

"If you decide that there is no evidence from which you could conclude that Ms. Hamlin and the others who participated in the termination decision, terminated [the plaintiff's employment] because she had previously had filed claims or otherwise exercised her rights, then you must deliberate no further and find for the [defendant] by returning a defendant's verdict."

compensation benefits or otherwise exercising her rights.

"The [defendant] does not have to prove those reasons to you, nor is it necessary that you agree with the reasons given. The [defendant] has offered evidence that the plaintiff's employment was terminated because of a permanent lifting restriction imposed by her doctor and the [defendant's] policy not to provide permanent light duty assignments for nursing assistants. Therefore, I direct you to find that the [defendant] has offered a nonretaliatory reason for its decision and has met its burden."[8]

As directed, the jury answered the second interrogatory in the affirmative and, after deliberating, answered the first in the negative and returned a defendant's verdict determining that the plaintiff had failed to offer credible evidence supportive of a conclusion that the defendant had terminated her employment in retaliation for the exercise of her workers' compensation rights.

The plaintiff in her brief contends that "[d]irecting the jury to answer [the second interrogatory] could only have led to confusion among jury members. In effect, the court took the case away from the jury. By telling the jury that the defendant had offered a legitimate, nondiscriminatory reason, the jury members believed the [defendant] because they were instructed that the

___

[8] The court further explained the relevant standard in the following manner. "Because the [defendant] has presented a legitimate, nonretaliatory reason for terminating [the plaintiff's employment], you must find for the [defendant] in this case unless [the plaintiff] can prove, and has proven, by a preponderance of the evidence that the reason given by the [defendant] is unworthy of belief and was not the real reason for its decision, and that Ms. Hamlin's real reason for terminating her was to retaliate against her because she had previously filed claims or otherwise exercised her workers' compensation rights. In other words, [the plaintiff] must prove that the [defendant's] stated reason was merely a pretext and not the real reason. If you find that [the plaintiff] has not proven this, then you must find in favor of the [defendant] and return a defendant's verdict."

defendant's reason was legitimate. There was nothing left for the jury to decide."

Undoubtedly, question two of the interrogatories was drawn from the second step of the *Ford* test. The court properly instructed the jury on the law. The question, however, is whether it was appropriate for the court to instruct the jury how to answer the second interrogatory. Although the court improperly instructed the jury as to how it should answer the second interrogatory, in doing so, the court caused the plaintiff no "unquestionable harm" as a matter of law. See *Diaz* v. *Housing Authority*, 258 Conn. 724, 731–32, 785 A.2d 192 (2001) (failure to apply burden shifting analysis harmless error where facts unequivocally dictate result). Pursuant to the *Ford* test, if the plaintiff presents evidence that gives rise to a reasonable inference that her discharge was in retaliation for exercising workers' compensation rights, the burden of production, not proof, shifts to the defendant to rebut that presumption by providing evidence of a legitimate reason for terminating the plaintiff's employment. It is clear from the record that the defendant offered evidence of nonretaliatory reasons for the plaintiff's discharge. Consequently, the defendant met and satisfied its burden of production and, therefore, the court's direction to the jury regarding the second interrogatory was harmless under the facts of this case. More significant, however, is the fact that the jury determined pursuant to its answer to the first interrogatory that the plaintiff had failed to make out a prima facie case and, thus, the jury never would have reached the second interrogatory, save for the fact that the court directed the answer to that interrogatory.

## II

Finally, the plaintiff claims that the court improperly denied her motion to set aside the jury's verdict. The

plaintiff's motion was based solely on her claim that the court's instructions to the jury were improper.

"In reviewing the action of the trial court in denying [a motion] . . . to set aside [a] verdict, our primary concern is to determine whether the court abused its discretion and we decide only whether, on the evidence presented, the jury could fairly reach the verdict [it] did." (Internal quotation marks omitted.) *Daigle* v. *Metropolitan Property & Casualty Ins. Co.*, 60 Conn. App. 465, 476, 760 A.2d 117 (2000), aff'd, 257 Conn. 359, 777 A.2d 681 (2001). Because this court has determined the plaintiff's instructional claim to be without merit, her motion to set aside the verdict properly was denied.

The judgment is affirmed.

In this opinion the other judges concurred.