JOHN G. FENNER *v.* HARTFORD
COURANT COMPANY
(AC 22836)

Foti, Dranginis and Hennessy, Js.

Argued February 24—officially released June 3, 2003

*Otto P. Witt*, with whom, on the brief, was *John G. Fenner*, pro se, for the appellant (plaintiff).

*Margaret J. Strange*, with whom was *James F. Shea*, for the appellee (defendant).

*Opinion*

HENNESSY, J. The plaintiff, John G. Fenner, appeals from the judgment of the trial court, rendered after a jury trial, in favor of the defendant, the Hartford Courant Company. The plaintiff had brought an action against the defendant for wrongful termination of employment in violation of public policy. On appeal, the plaintiff claims that the court improperly (1) denied him his rights to due process by refusing to waive the cost of a transcript for the entire trial for the purpose of this appeal, and (2) charged the jury in its instructions and on the special verdict form with respect to wrongful discharge of an employee.

The following facts are relevant to the plaintiff's appeal.[1] The plaintiff was hired as a truck driver by the

---

[1] As discussed in this opinion, the plaintiff did not provide this court with a transcript of the trial. The facts, therefore, are taken from the plaintiff's complaint, the defendant's answer, the parties' briefs and the exhibits presented at trial.

defendant on October 17, 1994. On December 28, 1996, the defendant received a telephone call informing it that the plaintiff had been involved in an accident that resulted in property damage to a shopping center. A supervisor for the defendant requested that the plaintiff fill out a company form entitled, "Automobile Accident or Loss Notice." The form also stated "Reliance National Indemnity Co." and listed a policy number. The plaintiff filled out his address, date of birth, telephone number, operator's number and social security number. The plaintiff refused to fill out the rest of the form because he claimed that he was not involved in an accident. On January 14, 1997, the plaintiff was terminated for "failure to follow company policies and practices," presumably for his refusal to fill out the rest of the accident report.

Thereafter, the plaintiff filed a complaint alleging that the defendant wrongfully had terminated his employment. The complaint alleged, inter alia, that "[the defendant] terminated [the plaintiff's employment] for refusing to complete the insurance form that would have required him to provide what he reasonably believed was false information to the [defendant's] insurance carrier. . . . [The plaintiff's] refusal to provide false information on the insurance [claim] form about an alleged auto accident was protected by the important public policies of the State of Connecticut as set forth in [General Statutes § 53a-215]. This statute provides for criminal penalties for furnishing false information on insurance [claim] forms. . . . Under Connecticut law, the [defendant] wrongfully terminated [the plaintiff's employment] because it fired him for refusing to engage in activity that violated this statute."

Following a trial, the jury returned a verdict for the defendant. The plaintiff filed an appeal and an application for a waiver of fees, including the transcript fee, on March 6, 2002. On that same day, the court granted

the application for a waiver of the filing fee, but denied without prejudice the request to waive the fee for a transcript so that the plaintiff could make a specific request for transcripts.

On March 7, 2002, the plaintiff filed an application for a waiver of the fee for the transcript of the jury charge. On that same day, the court granted the application for a transcript of the jury charge. The plaintiff then filed an application for the "court transcript" on March 21, 2002. On April 1, 2002, the court held a hearing concerning the plaintiff's application for a waiver of fees for a transcript of the entire trial. On April 2, 2002, the court denied the plaintiff's application as to the entire trial transcript, and the plaintiff filed a motion for reconsideration on April 4, 2002. In that motion, the plaintiff stated that "[w]ithout the trial transcript, the Appellate Court will not have any factual pattern to compare the charge to in making its determination as to whether the charge was appropriate under the facts and circumstances as presented. It would also be necessary to the Plaintiff's Appeal to quote said transcript in arguing other relevant issues of law." The court denied the plaintiff's motion for reconsideration on April 17, 2002.

The plaintiff's first claim is that the court violated his due process rights when it denied his application for a waiver of fees for a transcript of the entire trial. The plaintiff has provided this court with no legal authority to support his claim. In addition, the plaintiff cannot prevail because he failed to avail himself of the proper remedy for the court's denial of the fees.

The waiver of fees and costs for a civil appeal is governed by Practice Book § 63-6, which provides in relevant part: "If a party in any case where fees and costs may lawfully be waived is indigent and desires to appeal, that party may, within the time provided by

the rules for taking an appeal, make written application, to the court to which the fees required by statute or rule are to be paid, for relief from payment of fees, costs and expenses. . . . The judicial authority shall assign the request for waiver of fees, costs and expenses for a hearing within twenty days of its filing and shall act promptly on the application following the hearing. . . . If the court is satisfied that the applicant is indigent and entitled to an appeal because of a statutory or constitutional right to court appointed counsel or allowing an indigent party to appeal without payment of fees, costs and expenses, the court may . . . (2) order that the necessary expenses of prosecuting the appeal be paid by the state. . . . The judge shall authorize a transcript at state expense only of the portions of testimony or proceedings which may be pertinent to the issues on appeal. . . ." The court gave the plaintiff a hearing and presumably did not believe that the entire trial transcript was pertinent to the plaintiff's appeal.[2]

Practice Book § 63-6 further provides in relevant part: "The sole remedy of any party desiring the court to review an order concerning the waiver of fees, costs and security shall be by motion for review under Section 66-6." According to Practice Book § 66-6, the motion for review shall be filed within ten days of the notice of the order for which review is sought. The plaintiff did not file a motion for review within ten days and did not file a motion for permission to file a late motion for review with this court.

"It is incumbent upon the appellant to take the necessary steps to sustain its burden of providing an adequate

___

[2] The plaintiff did not file a motion for articulation and therefore, this court has no record of the trial court's reasoning for denying the plaintiff's application. "[W]e read an ambiguous record, in the absence of a motion for articulation, to support rather than to undermine the judgment." (Internal quotation marks omitted.) *Thompson* v. *Orcutt,* 70 Conn. App. 427, 441, 800 A.2d 530, cert. denied, 261 Conn. 917, 806 A.2d 1058 (2002).

record for appellate review. . . . Indeed, several rules of practice aim to facilitate the process by which an appealing party ensures the adequacy of the record. . . . These rules foster the basic policy that an appellate tribunal cannot render a decision without first fully understanding the disposition being appealed. . . . Our role is not to guess at possibilities, but to review claims based on a complete factual record developed by a trial court. . . . Without the necessary factual and legal conclusions furnished by the trial court . . . any decision made by us respecting [the plaintiff's claims] would be entirely speculative." (Citations omitted; internal quotation marks omitted.) *Gladstone, Schwartz, Baroff & Blum* v. *Hovhannissian*, 53 Conn. App. 122, 127, 728 A.2d 1140 (1999).

The plaintiff's claim that his due process rights were denied must fail because he did not avail himself of the proper procedural vehicles to challenge the court's determination that a transcript of the entire trial was not necessary. See *Thompson* v. *Orcutt*, 70 Conn. App. 427, 441, 800 A.2d 530, cert. denied, 261 Conn. 917, 806 A.2d 1058 (2002).

The plaintiff's second claim is that the court improperly stated the law with respect to wrongful termination in both its jury charge and on the special verdict form.[3] Specifically, the plaintiff claims that the court's instruc-

[3] The plaintiff's brief stated several claims with respect to the court's instruction on the law of wrongful discharge. One of the plaintiff's claims on appeal is that the court failed to adapt the law to the case in question. See *Marshall* v. *O'Keefe*, 55 Conn. App. 801, 804–805, 740 A.2d 909 (1999), cert. denied, 252 Conn. 918, 744 A.2d 438 (2000). We are unable to address this claim because the record is inadequate for review of that issue. As stated previously, the appellant has the duty to provide this court with an adequate record for review. *Senco, Inc.* v. *Fox-Rich Textiles, Inc.*, 75 Conn. App. 442, 443 n.2, 816 A.2d 654, cert. denied, 263 Conn. 916, 821 A.2d 770 (2003).

We have consolidated the plaintiff's remaining issues for the purpose of this opinion because they all relate to the single issue of whether the court misstated the law concerning wrongful discharge.

tion required him to prove that the defendant violated § 53a-215[4] to prevail on his claim of wrongful termination in violation of public policy.

The following additional facts are relevant to that issue. On January 11, 2002, the plaintiff filed a proposed request to charge and verdict form that explicitly stated that he did not need to demonstrate a violation of § 53a-215, but only that he reasonably believed that the information would be used to deceive an insurance company.[5]

---

[4] General Statutes § 53a-215 (a) provides: "A person is guilty of insurance fraud when the person, with the intent to injure, defraud or deceive any insurance company: (1) Presents or causes to be presented to any insurance company, any written or oral statement including computer-generated documents as part of, or in support of, any application for any policy of insurance or a claim for payment or other benefit pursuant to such policy of insurance, knowing that such statement contains any false, incomplete, or misleading information concerning any fact or thing material to such application or claim; or (2) assists, abets, solicits, or conspires with another to prepare or make any written or oral statement that is intended to be presented to any insurance company in connection with, or in support of, any application for any policy of insurance or any claim for payment or other benefit pursuant to such policy of insurance, knowing that such statement contains any false, incomplete, or misleading information concerning any fact or thing material to such application or claim for the purposes of defrauding such insurance company."

[5] The plaintiff's proposed charge included the following: "To maintain a claim for wrongful discharge under Connecticut law requires only that [the plaintiff] show 'a demonstrably improper reason for dismissal, a reason whose impropriety is derived from some important violation of public policy.' This public policy may be derived from the specific provisions of a statute or it may be judicially conceived. If that policy is embodied in a statute, it is not necessary that [the plaintiff] show that the defendant was actually violating the statute in order to make his case. The Connecticut law of wrongful discharge does 'not require a violation of a statute, federal or state, to maintain the cause of action, just a violation of the public policy expressed in a statute.' Thus, [the plaintiff] does not have to show that either his conduct or the defendant's conduct actually violated a Connecticut statute. All he needs to show is that the reason why the defendant terminated him is a reason that violates one of the purposes for which a statute was passed. . . . Because [the plaintiff] does not need to prove what he claims the defendant asked him to do would have been a direct violation of [General Statutes] § 53a-215, he does not need to prove that the form involved was actually used for insurance purposes or that insurance was involved in

On January 25, 2002, the plaintiff filed an amended proposed verdict form. The plaintiff requested the first question of the verdict form to state: "Did the plaintiff, John G. Fenner, prove, by a fair preponderance of the evidence, that the defendant, The Hartford Courant Company, wrongfully terminated his employment in violation of the public policy of the state of Connecticut?"

The court's charge to the jury included, inter alia: "Absent a violation of public policy, the law does not permit you to second-guess an employer's exercise of managerial discretion in deciding to terminate an employee. You are not permitted to interfere with an employer's exercise of managerial discretion in deciding to terminate an employee. You are not permitted to interfere with an employer's personnel decision unless it violates public policy. Now, in this case, [the plaintiff] has alleged that he was wrongfully terminated by the [defendant] in violation of the public policy of the state of Connecticut embodied in Connecticut General Statutes § 53a-215, which statute is entitled in part, 'Insurance fraud.' The [defendant's] business judgment is not subject to review here. . . . Now, the public policy embodied in Connecticut General Statutes § 53a-215 is Connecticut's policy against submitting false or misleading information to an insurance company for

paying for any losses the defendant believed [the plaintiff has] caused. . . . In order to win this case, however, [the plaintiff] must prove that the defendant's conduct placed him in a position where to prevent his firing he had to provide what he thought was untruthful information on what he believed was an insurance form. He must prove that he had a reasonable belief that this was true. . . . For this reason, I instruct you as follows. If you find, by a fair preponderance of the evidence, that the defendant terminated [the plaintiff's] employment because [the plaintiff] had refused to provide what [the plaintiff] reasonably believed was false information on what he also reasonably believed was an insurance form, then the defendant wrongfully terminated [the plaintiff] for reasons that violate the public policy of the State of Connecticut. In that case, you must issue a verdict for [the plaintiff] on his complaint."

the purpose of deceiving it. It is not enough for [the plaintiff] to merely prove that he believed, reasonably or not, that the [defendant] intended to use his statement to file an insurance claim; rather, [the plaintiff] must prove by a preponderance of the evidence that the [defendant's] reason for dismissing him was because he did not supply it with false or misleading information for the [defendant] to use in deceiving the [defendant's] insurance company."

The court's special verdict form stated the first question as follows: "Has Plaintiff proven, by a preponderance of the evidence, that the [defendant's] reason for discharging him violated the public policy against submitting false or misleading information to its insurance company for the purpose of deceiving it?"

The standard of review concerning claims of error in jury instructions is well settled. "[J]ury instructions must be read as a whole and . . . are not to be judged in artificial isolation from the overall charge. . . . The whole charge must be considered from the standpoint of its effect on the jurors in guiding them to a proper verdict . . . and not critically dissected in a microscopic search for possible error. . . . We must review the charge as a whole to determine whether it was correct in law and [whether it] sufficiently guided the jury on the issues presented at trial. . . . The test of a court's charge is not whether it is as accurate upon legal principles as the opinions of a court of last resort but whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . Therefore, jury instructions need not be exhaustive, perfect, or technically accurate. Nonetheless, the trial court must correctly adapt the law to the case in question and must provide the jury with sufficient guidance in reaching a correct verdict." (Internal quotation marks omitted.)

*Barrett* v. *Hebrew Home & Hospital, Inc.*, 73 Conn. App. 327, 331–32, 807 A.2d 1075 (2002).

In this case, any claim that the court's instruction did not correctly apply the facts to the law cannot be reviewed because the plaintiff did not supply an adequate record for appellate review. We therefore review the jury instruction only with respect to whether it improperly stated the law of wrongful termination in violation of public policy without considering the facts as presented at trial.

The plaintiff alleges that the court's instruction was contrary to our Supreme Court's decision in *Sheets* v. *Teddy's Frosted Foods, Inc.*, 179 Conn. 471, 427 A.2d 385 (1980), in that the instruction required him to have proved that a specific statute was violated when his employment was terminated. We do not agree.

As a general rule, an employer is free to terminate an at-will employee's employment with impunity. *Campbell* v. *Plymouth*, 74 Conn. App. 67, 74, 811 A.2d 243 (2002). In *Sheets*, our Supreme Court recognized an exception to the general rule in which an employee may have a cause of action when the employee alleges "a demonstrably *improper* reason for dismissal, a reason whose impropriety is derived from some important violation of public policy." (Emphasis in original.) *Sheets* v. *Teddy's Frosted Foods, Inc.*, supra, 179 Conn. 475. That exception, however, is to be construed narrowly. *Burnham* v. *Karl & Gelb, P.C.*, 252 Conn. 153, 159, 745 A.2d 178 (2000).

Our Supreme Court further stated: "We need not decide whether violation of a state statute is invariably a prerequisite to the conclusion that a challenged discharge violates public policy. Certainly when there is a relevant state statute we should not ignore the statement of public policy that it represents. For today, it is enough to decide that an employee should not be

put to an election whether to risk criminal sanction or to jeopardize his continued employment." *Sheets* v. *Teddy's Frosted Foods, Inc.*, supra, 179 Conn. 480. According to the plaintiff's complaint, he was placed in just such a situation when he allegedly was forced to violate a criminal statute or have his employment terminated.

Our Supreme Court has elaborated on the public policy exception and "recognized the inherent vagueness of the concept of public policy and the difficulty encountered when attempting to define precisely the contours of the public policy exception. In evaluating claims, [w]e look to see whether the plaintiff has . . . alleged that his discharge violated any explicit statutory or constitutional provision . . . or whether he alleged that his dismissal contravened any judicially conceived notion of public policy." (Internal quotation marks omitted.) *Faulkner* v. *United Technologies Corp.*, 240 Conn. 576, 581, 693 A.2d 293 (1997).

We do not agree that the court's instruction required the plaintiff to prove a violation of § 53a-215. The court stated that "the public policy *embodied* in Connecticut General Statutes § 53a-215 is Connecticut's policy against submitting false or misleading information to an insurance company for the purpose of deceiving it. . . . [The plaintiff] must prove by a preponderance of the evidence that the [defendant's] reason for dismissing him was because he did not supply it with false or misleading information for the [defendant] to use in deceiving the [defendant's] insurance company." (Emphasis added.) From those instructions, it is clear that the plaintiff did not have to demonstrate a violation of § 53a-215, only that he was asked to supply false information to assist the defendant in deceiving an insurance company.[6] The special verdict form also

[6] We also note that the plaintiff did not allege that the defendant required him to put false information on the form. He alleges that they terminated his employment because continuing to fill out the form "would have required

stated that the plaintiff must prove that the false information was "for the *purpose* of deceiving [the insurance company]." (Emphasis added.)

Those instructions did not make the plaintiff prove a direct violation of § 53a-215. The plaintiff was required to prove only that the false information was *intended* to be used in a manner that could deceive an insurance company within the public policy contained in § 53a-215. In *Sheets*, our Supreme Court stated that an employee should not be placed in a situation in which he is forced to risk a criminal penalty or jeopardize his future employment. *Sheets* v. *Teddy's Frosted Foods, Inc.*, supra, 179 Conn. 480; see also *Faulkner* v. *United Technologies Corp.*, supra, 240 Conn. 583. The court's instruction precisely followed that proposition.

The plaintiff further argues that he should have had to prove only that *he reasonably believed* the information was going to be used to deceive an insurance company, not that the information actually would be submitted to an insurance company in a fraudulent manner. After a thorough review of the case law, we can find no support for the proposition that the employee's subjective beliefs can be the basis for the public policy exception in an action for the wrongful termination of an at-will employee.

All of the cases that fall within the exception to an employer's immunity discuss the defendant's actual violation of the public policy. See, e.g., *Thibodeau* v. *Design Group One Architects, LLC*, 260 Conn. 691, 701, 802 A.2d 731 (2002) ("we have rejected claims of wrong-

him to provide what he reasonably believed was false information to the [defendant's] insurance carrier" in violation of public policy. The plaintiff does not state what false information he was requested to provide. In examining similar forms previously completed by the plaintiff for unrelated incidents, there is a space to describe the incident. There is no evidence that the plaintiff was instructed to fabricate an accident, and it seems reasonable that he could have described his version of events in the space provided.

ful discharge that have not been predicated upon an employer's violation of an important and clearly articulated public policy"); *Parsons* v. *United Technologies Corp.*, 243 Conn. 66, 86, 700 A.2d 655 (1997) ("we are *not* holding that an at-will employee can contest his or her discharge based on a *subjective* belief that an employer's directive would pose a threat to the employee's health and safety" [emphasis in original]); *Morris* v. *Hartford Courant Co.*, 200 Conn. 676, 679, 513 A.2d 66 (1986) ("[e]mployee job security, however, is protected against employer actions that contravene public policy").

The plaintiff's subjective belief is not relevant under the facts he alleged. To hold otherwise would defeat the general immunity allowed an employer to discharge an at-will employee. The court's instruction properly placed the burden on the plaintiff to demonstrate *objectively* that the defendant's conduct violated public policy.

The court's instruction did not misstate the public policy exception for the wrongful termination of an at-will employee, nor did it improperly place the burden on the plaintiff to demonstrate that a direct violation of a statute had occurred.

The judgment is affirmed.

In this opinion the other judges concurred.