******************************************

The ''officially released'' date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the ''officially released'' date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

# HELEN SIERANSKI *v.* TJC ESQ, A PROFESSIONAL SERVICES CORPORATION
## (AC 43272)

Bright, C. J., and Moll and Suarez, Js.

*Syllabus*

The plaintiff sought to recover damages from the defendant, T Co., for, inter alia, the alleged wrongful termination of her employment in violation of the statutory (§§ 3-94h and 53a-157b) public policy against making false statements with the intent to deceive or mislead. The plaintiff was employed by T Co. as a paralegal and reported to G, an attorney. G asked the plaintiff to prepare an affidavit stating something that the plaintiff alleged was not true regarding a litigation matter. The plaintiff drafted the affidavit but refused to notarize it because she knew it was false. G kept asking the plaintiff about the status of the affidavit and the plaintiff repeatedly stated that it was not filed because she would not sign it. T Co. terminated the plaintiff's employment approximately eight days after G first asked her to draft the affidavit. The defendant filed a motion to strike the count of the plaintiff's complaint alleging wrongful termination in violation of public policy, arguing that she failed to allege sufficient facts to establish that T Co.'s conduct at issue contravened the public policy cited. The trial court granted T Co.'s motion to strike, and the plaintiff appealed to this court. *Held* that the trial court erred in granting T Co.'s motion to strike as to the count of the complaint alleging wrongful termination in violation of public policy, as the plaintiff sufficiently pleaded facts that, if proven, would fall under the public policy exception to the at-will employment doctrine; when read in the light most favorable to the plaintiff, the alleged facts were sufficient to support a finding that the plaintiff's employment was terminated because she refused to assist T Co. in misleading the court and others involved in the subject litigation by notarizing the allegedly false affidavit, and both §§ 3-94h and 53a-157b outline a public policy against knowingly assisting an affiant in submitting false statements to a court.

Argued October 19, 2020—officially released March 2, 2021

*Procedural History*

Action to recover damages for alleged wrongful termination, and for other relief, brought to the Superior Court in the judicial district of Ansonia-Milford, where the court, *Tyma*, *J.*, granted in part the defendant's motion to strike; thereafter, the court granted the defendant's motion for summary judgment and rendered judgment thereon, from which the plaintiff appealed to this court. *Reversed in part*; *further proceedings*.

*Megan L. Michaud*, for the appellant (plaintiff).

*Maria Garcia-Quintner*, for the appellee (defendant).

*Opinion*

SUAREZ, J. The plaintiff, Helen Sieranski, brought a three count complaint against her former employer, the defendant, TJC Esq, A Professional Services Corporation, seeking damages for wrongful termination, pregnancy discrimination, and gender discrimination (original complaint). The court granted the defendant's motion to strike the first count of the original complaint, in which the plaintiff alleged common-law wrongful termination in violation of the public policy outlined in General Statutes §§ 3-94h and 53a-157b. Thereafter, the plaintiff filed a revised complaint alleging, in one count, pregnancy discrimination. After the court rendered summary judgment as to that count, the plaintiff brought the present appeal in which she challenges the court's judgment striking count one of her original complaint. For the reasons set forth below, we reverse in part the judgment of the trial court.

The following procedural history is relevant to this appeal. On November 13, 2017, the plaintiff filed the original complaint against the defendant alleging (1) wrongful termination of her employment in violation of the public policy embodied in §§ 3-94h and 53a-157b, (2) pregnancy discrimination in violation of General Statutes § 46a-60 (b) (7), and (3) gender discrimination in violation of § 46a-60 (b) (1).[1]

The plaintiff alleged the following relevant facts in count one of the original complaint: "The defendant is a law firm . . . . The plaintiff was employed by the defendant as a litigation paralegal. . . . While the plaintiff was employed by the defendant she reported to Attorney Brooke Goff. . . . On or about March 23, 2017, Attorney Goff realized [that] they had missed the time to appeal an arbitrator's decision on a case and asked the plaintiff to prepare an affidavit stating [that they had] never received the arbitrator's decision, which was not true. . . . The plaintiff drafted the affidavit but refused to notarize [it] because she knew it was false. . . . For the rest of the week Attorney Goff kept asking the plaintiff what the status was for the affidavit and the plaintiff repeatedly stated [that] it was not filed because the plaintiff would not sign the affidavit. . . . The defendant terminated the plaintiff's employment on March 31, 2017. . . . The defendant stated the reason for the plaintiff's termination was [that] she was not a good fit." The plaintiff further alleged in relevant part: "The defendant terminated the [plaintiff's employment] in retaliation for refusing to notarize a false affidavit. . . . The defendant's termination of the plaintiff's employment is in violation of the long-standing public policy outlined in . . . § 3-94h and . . . § 53a-157b."

On January 22, 2018, the defendant filed a motion to strike each of the three counts in the original complaint.

With respect to count one, the defendant argued that the plaintiff "fail[ed] to allege sufficient facts to establish that the employer's conduct at issue contravenes the public policy cited." The court heard oral argument on the motion to strike on March 12, 2018. The plaintiff argued that it was a violation of public policy "for an attorney to force [her] paralegal to draft a knowingly false affidavit and notarize the same for a submission to a judicial fact-finding body." The defendant argued that §§ 3-94h and 53a-157b did not reflect a general public policy against the conduct alleged by the plaintiff, and that the plaintiff's act of notarizing the affidavit was not prohibited by the statutes.

On July 10, 2018, the court granted the defendant's motion to strike the first and third counts of the original complaint, and it denied the motion as to the second count alleging pregnancy discrimination. The court issued a memorandum of decision on the same date. As to count one, which is the subject of the present appeal, the court concluded that, "[a]ccepting the allegations as true, the plaintiff [failed] to make any allegations that the defendant terminated the plaintiff because she refused to perform an official notary act with the intent to deceive or defraud." The court reasoned that "a notary has the authority to administer oaths, take an acknowledgement, and provide a jurat, but does not have the power to themselves affirm the truth of the contents of the document signed by another." Instead, the court explained, the affiant herself swears to the truth of the content of the document, while a notary "just affirms that the signer vouched for the truthfulness." The court concluded, therefore, that § 3-94h was inapplicable to the facts alleged and failed to support the plaintiff's claim. Additionally, the court concluded that § 53a-157b was inapplicable because "the plaintiff failed to allege the content of the affidavit, or that anyone made a false statement intended to mislead a public official, or made such a statement under oath. At most, the plaintiff alleges that she prepared a document at the request of Attorney Goff that was not signed or notarized."

Thereafter, the plaintiff did not plead over with respect to counts one or three. Instead, on July 16, 2018, pursuant to Practice Book §§ 61-2 and 61-5, she filed a notice of her intent to appeal, with respect to count one only, the court's decision granting the defendant's motion to strike.[2] On July 31, 2018, the defendant filed a request to revise, requesting that the plaintiff remove all allegations from the original complaint that were immaterial to count two, alleging discrimination on the basis of pregnancy, which was the sole remaining claim in the case. On August 6, 2018, in accordance with the defendant's request, the plaintiff filed a revised complaint that removed counts one and three and the allegations that were material only to those counts. On September 5, 2018, the defendant filed its answer and four

special defenses. On September 18, 2018, the plaintiff filed a reply to the special defenses.

On December 14, 2018, the defendant filed a motion for summary judgment with respect to the sole count in the revised complaint, alleging pregnancy discrimination, which the court granted on August 6, 2019.[3] The plaintiff filed the present appeal on August 8, 2019.[4] Additional procedural history will be set forth as necessary.

The plaintiff claims that the court erred in granting the defendant's motion to strike as to count one of the original complaint, which alleged common-law wrongful termination in violation of the public policy outlined in §§ 3-94h and 53a-157b. We agree.

Practice Book § 10-39 (a) provides in relevant part: "A motion to strike shall be used whenever any party wishes to contest . . . (1) the legal sufficiency of . . . any one or more counts . . . to state a claim upon which relief can be granted . . . ."

"The standard of review in an appeal challenging a trial court's granting of a motion to strike is well established. A motion to strike challenges the legal sufficiency of a pleading, and, consequently, requires no factual findings by the trial court. As a result, our review of the court's ruling is plenary. . . . We take the facts to be those alleged in the complaint that has been stricken and we construe the complaint in the manner most favorable to sustaining its legal sufficiency. . . . Thus, [i]f facts provable in the complaint would support a cause of action, the motion to strike must be denied." (Internal quotation marks omitted.) *Sempey* v. *Stamford Hospital*, 194 Conn. App. 505, 511, 221 A.3d 839 (2019).

Next, we briefly discuss what constitutes common-law wrongful discharge in violation of public policy. Our Supreme Court has recognized "the principle that public policy imposes some limits on unbridled discretion to terminate the employment of someone hired at will." *Sheets* v. *Teddy's Frosted Foods, Inc.*, 179 Conn. 471, 476, 427 A.2d 385 (1980). In creating this public policy exception to the at-will employment doctrine, the court in *Sheets* stated that an employee may have a cause of action when the employee alleges "a demonstrably improper reason for dismissal, a reason whose impropriety is derived from some important violation of public policy." (Emphasis omitted.) Id., 475.

"Although the court in *Sheets* recognized a public policy limitation on [this] doctrine in an effort to balance the competing interests of employers and employees . . . [it also] recognized the inherent vagueness of the concept of public policy and the difficulty encountered when attempting to define precisely the contours of the public policy exception. In evaluating claims, [courts should] look to see whether the plaintiff has

. . . alleged that [her] discharge violated any explicit statutory or constitutional provision . . . or whether [she] alleged that [her] dismissal contravened any judicially conceived notion of public policy. . . .

"Our Supreme Court also repeatedly [has] underscored [that] adherence to the principle that the public policy exception to the general rule allowing unfettered termination of an at-will employment relationship is a narrow one. . . . [C]ourts should not lightly intervene to impair the exercise of managerial discretion or to foment unwarranted litigation . . . . Consequently, we have rejected claims of wrongful discharge that have not been predicated upon an employer's violation of an important and clearly articulated public policy." (Citation omitted; internal quotation marks omitted.) *Morrissey-Manter* v. *Saint Francis Hospital & Medical Center*, 166 Conn. App. 510, 531, 142 A.3d 363, cert. denied, 323 Conn. 924, 149 A.3d 982 (2016).

Additionally, the court in *Sheets* stated: "We need not decide whether violation of a state statute is invariably a prerequisite to the conclusion that a challenged discharge violates public policy. Certainly when there is a relevant state statute we should not ignore the statement of public policy that it represents. For today, it is enough to decide that an employee should not be put to an election whether to risk criminal sanction or to jeopardize [her] continued employment." *Sheets* v. *Teddy's Frosted Foods, Inc.*, supra, 179 Conn. 480.

"[T]he [plaintiff] has the burden of pleading and proving that [her] dismissal occurred for a reason violating public policy." *Morris* v. *Hartford Courant Co.*, 200 Conn. 676, 679, 513 A.2d 66 (1986). Further, a plaintiff must prove the employer's violation of public policy under an objective standard. *Fenner* v. *Hartford Courant Co.*, 77 Conn. App. 185, 196–97, 822 A.2d 982 (2003).

In the present case, like in cases such as *Sheets* and *Fenner*, the plaintiff alleged in her original complaint that she was placed in a situation where she was forced to violate a statute or have her employment terminated. See *Sheets* v. *Teddy's Frosted Foods, Inc.*, supra, 179 Conn. 480; *Fenner* v. *Hartford Courant Co.*, supra, 77 Conn. App. 195. The plaintiff relies, in part, on the public policy embodied in § 53a-157b (a), which states: "A person is guilty of false statement when such person (1) intentionally makes a false written statement that such person does not believe to be true with the intent to mislead a public servant in the performance of such public servant's official function, and (2) makes such statement under oath or pursuant to a form bearing notice, authorized by law, to the effect that false statements made therein are punishable." The plaintiff argues that § 53a-157b outlines a general policy against making false statements with the intent to deceive or mislead.

The defendant argues that the original complaint fails to allege any affirmative conduct by the defendant that satisfies the elements of § 53a-157b. It asserts that because there was no allegation that Attorney Goff asked the plaintiff to be the affiant, the plaintiff could not have violated the statute merely by preparing the affidavit. The defendant also contends that the original complaint lacks any allegation that Attorney Goff or any employee other than the plaintiff believed the statements in the affidavit to be false. The defendant further argues that § 53a-157b is inapplicable because count one refers exclusively to the plaintiff's alleged refusal to notarize the affidavit. We are not persuaded by the defendant's arguments.

"In Connecticut, we long have eschewed the notion that pleadings should be read in a hypertechnical manner. Rather, [t]he modern trend, which is followed in Connecticut, is to construe pleadings broadly and realistically, rather than narrowly and technically. . . . [T]he complaint must be read in its entirety in such a way as to give effect to the pleading with reference to the general theory upon which it proceeded, and do substantial justice between the parties. . . . Our reading of pleadings in a manner that advances substantial justice means that a pleading must be construed reasonably, to contain all that it fairly means, but carries with it the related proposition that it must not be contorted in such a way so as to strain the bounds of rational comprehension." (Internal quotation marks omitted.) *Deming* v. *Nationwide Mutual Ins. Co.*, 279 Conn. 745, 778, 905 A.2d 623 (2006).

Here, contrary to the defendant's assertion, the allegations, when read as a whole, reasonably can be interpreted to allege that Attorney Goff knew that the statements that she directed the plaintiff to include in the affidavit were false. To reiterate, the original complaint alleged that "Attorney Goff realized they had missed the time to appeal an arbitrator's decision on a case and asked the plaintiff to prepare an affidavit stating [that they had] never received the arbitrator's decision, which was not true." This allegation reasonably may be interpreted to allege that Attorney Goff knew that she, in fact, had received the arbitrator's decision and did not file a timely appeal within the statutory appeal period, and that she wanted the plaintiff to draft a false affidavit that said otherwise.

The defendant relies on the fact that the original complaint does not name the affiant for whom the plaintiff was asked to prepare the affidavit. However, given that the plaintiff alleged in the original complaint that she was supervised in her employment by Attorney Goff and that Attorney Goff repeatedly asked the plaintiff about the status of the affidavit, it is reasonable to infer from these allegations that Attorney Goff planned to serve as the affiant and would have violated § 53a-157b

by signing an affidavit containing statements that she knew to be false. These allegations also allege conduct that is contrary to the public policy in the statute because, by knowingly including in the affidavit statements that the plaintiff also knew to be false, the plaintiff could have faced criminal exposure as an accessory to the affiant's violation of the statute. See General Statutes § 53a-8 (a). Thus, the facts alleged in the original complaint are sufficient to support a claim that the defendant contravened the public policy outlined in § 53a-157b when it terminated the plaintiff's employment for refusing to assist Attorney Goff in making false statements to the court.

We next turn to the plaintiff's reliance on the public policy embodied in § 3-94h. Section 3-94h provides in relevant part: "A notary public shall not (1) perform any official action with intent to deceive or defraud . . . ." The plaintiff argues that the plain language of the statute is "very broad." She asserts that the allegations in her original complaint fall under the statute because the act of notarizing an affidavit that a notary *knows* to contain false statements, which the affiant intends to file with a judicial body, constitutes performing an action with the intent to deceive or defraud. The defendant, on the other hand, asserts that the *Sheets* exception is narrow, and that a notary's act of notarizing an affidavit that she believes to be false does not objectively violate § 3-94h.[5]

The defendant relies on a 1991 amendment to the statute, which, among other things, deleted a portion of § 3-94h that stated that a notary shall not "notarize any document that contains a statement known by such notary to be false . . . ." Public Acts 1991, No. 91-110, § 4. The trial court also cited this amendment in the memorandum of decision in which it struck count one. The defendant asserts that this revision narrowed, rather than broadened, the statute to limit a notary's liability for the content of the affidavit. To support its argument, the defendant cites two passages from the legislative history of the bill amending the statute. First, Representative Douglas Mintz stated: "The bill also eliminates a notary's liability for the content of the document so they will, under the law as it's written, [they] might actually have to read the document and ask questions about it. That was never the intent of notarizing, taking acknowledgments . . . ." 34 H.R. Proc., Pt. 6, 1991 Sess., p. 2162, remarks of Representative Douglas Mintz. Second, Senator George Gunther stated: "I think . . . the content of the things that they notarize I don't think [notaries] should be held responsible for that and this act takes care of that particular area." 34 S. Proc., Pt. 4, 1991 Sess., p. 1125, remarks of Senator George Gunther.

Additionally, the defendant cites General Statutes § 3-94a (4), which states that a notary's role is only to

perform acts such as "taking an acknowledgement, administering an oath or affirmation, witnessing or attesting a signature and completing a copy certification." "Attesting to the accuracy or truthfulness of the content of an affidavit," the defendant contends, "is not within the notary's purview of responsibilities." Instead, the defendant asserts that a notary could engage in deception or fraud only as contemplated by the statute by, for example, "[notarizing] a signature knowing that the person signing was not the person identified as the signer, or without having witnessed the signature being made."

We do not agree that the 1991 amendment narrowed the statute in the way that the defendant posits. The bill left intact the language of § 3-94h prohibiting notaries from "perform[ing] *any official action* with intent to deceive or defraud . . . ." (Emphasis added.) The plain meaning of the phrase "any official action" is very broad and would encompass the alleged action of the plaintiff in preparing an affidavit that she knew to be false. Inherent in this prohibition is a public policy against notaries using their powers to knowingly assist an affiant in lying to a court of law. Given the unambiguous language of the statute, the defendant's and the trial court's reliance on the legislative history of the 1991 amendment is misplaced. See General Statutes § 1-2z; *State* v. *Brown*, 310 Conn. 693, 702, 80 A.3d 878 (2013) ("[t]he test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation" (internal quotation marks omitted)). Nevertheless, even if considered, the portions of the legislative history on which the defendant relies do not undermine the plain meaning of the statute. Under the plain language of the statute, the actions alleged in the original complaint, if performed by the plaintiff, would be considered deceitful.

The statutory scheme governing notaries public supports this public policy. Section 3-94a (8) defines "[o]fficial misconduct" as "(A) a notary public's performance of an act prohibited by the general statutes or failure to perform an act mandated by the general statutes, or (B) a notary public's performance of a notarial act in a manner found to be negligent, illegal or *against the public interest*." (Emphasis added.) Furthermore, General Statutes § 3-94m (a) provides in relevant part: "The Secretary [of the State] may deliver a written, official warning and reprimand to a notary, or may revoke or suspend a notary's appointment, as a result of such notary's official misconduct . . . ." Thus, these statutes place upon notaries an affirmative duty to act in the public interest.

Here, the original complaint not only alleged that the plaintiff knew that the statements in the affidavit were false, but also that she wrote the false statements on Attorney Goff's behalf by drafting the affidavit. This

scenario, therefore, is not one in which the plaintiff would have needed to read the document or otherwise go beyond her duties as a notary to discover that the statements within a given document were false. Instead, the statement at issue involved alleged falsehoods of which she had personal knowledge. By notarizing the affidavit that Attorney Goff asked her to prepare, the plaintiff would have performed her notarial duties in a matter that knowingly assisted the affiant in deceiving the court. Notaries serve as public officials appointed by the Secretary of the State. General Statutes § 3-94b (a). Public policy discourages a notary from engaging in the behavior alleged in the original complaint because it would violate § 3-94h, *and* because doing so would call into question the notary's integrity as a public official.

When viewing the original complaint in the light most favorable to the plaintiff, the alleged facts are sufficient to support a finding that the plaintiff's employment was terminated because she refused to assist the defendant in misleading the court and others involved in the subject litigation. Both §§ 3-94h and 53a-157b outline a public policy against knowingly assisting an affiant in submitting false statements to a court. This situation is one where, as in *Sheets*, the defendant allegedly punished the plaintiff for her conduct as a good citizen. See *Sheets* v. *Teddy's Frosted Foods, Inc.*, supra, 179 Conn. 477. Accordingly, we conclude that the plaintiff sufficiently pleaded facts that, if proven, would fall under the public policy exception to the at-will employment doctrine.

The judgment is reversed with respect to the striking of count one of the plaintiff's original complaint, and the case is remanded for further proceedings on that count consistent with this opinion; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.

[1] We note that the plaintiff cited to subsections (a) (1) and (7) of General Statutes (Rev. to 2017) § 46a-60 in her original complaint as support for her allegations of pregnancy and gender discrimination in her termination of employment on March 31, 2017. The legislature amended § 46a-60; see Public Acts 2017, No. 17-118; effective October 1, 2017. Those amendments have no bearing on the merits of this appeal. In the interest of simplicity, we refer to the current revision of the statute.

[2] We note that parties must file a notice of intent to appeal in two narrow circumstances: "(1) [W]hen the deferred appeal is to be filed from a judgment that not only disposes of an entire complaint, counterclaim or cross complaint but also disposes of all the causes of action brought by or against a party or parties so that that party or parties are not parties to any remaining complaint, counterclaim or cross complaint; or (2) when the deferred appeal is to be filed from a judgment that disposes of only part of a complaint, counterclaim, or cross complaint but nevertheless disposes of all causes of action in that pleading brought by or against a particular party or parties." Practice Book § 61-5 (a). Neither of these circumstances existed when the court granted the defendant's motion to strike counts one and three. Thus, the plaintiff did not have to file a notice of intent to appeal. Nevertheless, the plaintiff's appeal is properly before us because, as we note in footnote 3 of this opinion, it was taken from a final judgment issued on August 6, 2019.

[3] After granting the defendant's motion for summary judgment, the court issued a judgment file, which states: "This action commenced by writ, summons and complaint, and claiming damages, came to this court on November

13, 2017, and thence to later dates when the parties appeared. The matter thence came to later dates when the defendant . . . filed a motion to strike on January 22, 2018.

"The court, having heard argument, granted the defendant's motion to strike as to the first and third counts of the complaint on July 10, 2018.

"The defendant thence filed a motion for summary judgment as to the sole remaining count of the complaint on December 14, 2018. The court granted said motion on August 6, 2019.

"Whereupon, it is adjudged that judgment shall enter in favor of the defendant." This language can reasonably be interpreted to reflect that on August 6, 2019, the court rendered a final judgment with respect to all of the counts in favor of the defendant.

[4] On September 4, 2019, the defendant filed a motion to dismiss the plaintiff's appeal for lack of a final judgment. It argued that the plaintiff's "failure to move for judgment on count one of the original complaint after the court struck the count and prior to filing the revised complaint constitutes a waiver of the right to appeal the granting of the motion to strike." The defendant also asserted that no final judgment was rendered on the stricken claim. The plaintiff filed an objection to the defendant's motion to dismiss in which she argued that she properly had waited to appeal from the court's decision granting the defendant's motion to strike until there was a final judgment, which did not occur until the court rendered summary judgment in the defendant's favor on the sole remaining count. This court denied the defendant's motion on October 16, 2019.

In footnote 1 of its brief, the defendant invites this court to reconsider the jurisdictional issue raised in the motion to dismiss, stating: "After the plaintiff filed the instant appeal, the defendant moved to dismiss the appeal on the basis that the court lacked jurisdiction. The defendant argued that by filing an amended complaint . . . that dropped the [wrongful termination] claims entirely, the plaintiff failed to properly preserve her right to appeal the court's decision to strike such claim. In an order dated October 16, 2019, the Appellate Court denied the motion to dismiss. Given that jurisdictional issues can be raised at any point, the defendant renews and reincorporates the arguments set forth in its motion to dismiss. [Practice Book] § 66-8."

We are not persuaded to revisit the jurisdictional issue previously raised by the defendant in its motion to dismiss.

[5] The defendant also argues that § 3-94h does not apply because the original complaint does not allege that the plaintiff was a notary public. Count one of the original complaint states: "The defendant terminated the [plaintiff's employment] in retaliation for refusing to notarize a false affidavit." This statement is sufficient to support the inference that the plaintiff alleged that she was a notary public.